IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00070-CR

 

Derrick Bible,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 82nd District
Court

Robertson County, Texas

Trial Court No. 09-03-18639-CR

 



MEMORANDUM  Opinion










 

Derrick Bible appeals from his
conviction for the offense of capital murder.  Tex. Pen. Code Ann. § 19.03(a)(7) (West 2003).  Bible was
automatically sentenced to life without the possibility of parole.  Tex. Pen. Code Ann. § 12.31(a)(2) (West
2003).  Bible complains that the trial court abused its discretion in the
admission of evidence, by overruling objections to improper jury argument, and
that there was insufficient corroboration of the accomplice testimony.  Because
we find no reversible error, we affirm the judgment of the trial court.

 

FACTS

            One evening, Bible, D’Nard
Anderson, and Dameon Laws were in Hearne, Texas in search of drugs in a
gold-colored four-door sedan.  They approached Chandell Lewis, who was standing
outside of a vehicle with Fredel Miles.  Anderson asked Chandell for drugs and
Chandell told him it would be a minute and drove off.  Miles then acquired some
drugs, which he, Bible, Anderson, and Laws smoked.  Anderson spotted Clifton
Lewis, the cousin of both Anderson and Chandell, and asked him where they could
buy drugs.  Clifton suggested that they contact Chandell, and called him for
them.  A short time later, Clifton called Chandell using Bible’s cell phone. 
Anderson spotted Chandell at the designated location and Chandell told him to
follow his truck.  They followed Chandell to a small house.  At some point
prior to arriving at the house, Miles was ordered out of the car.  Chandell
remained in his truck and Anderson went to the vehicle, smelled the drugs, and
told Bible and Laws to go to Chandell’s truck one at a time, per Chandell’s
instructions.  Bible went and got into Chandell’s truck and Laws exited the
gold sedan and went to stand by Harry Monson, who was standing outside of the
house.  Two sets of gunfire ensued, which resulted in the death of both Chandell
and Monson.  According to Anderson, Bible and Laws ran back to the gold sedan and
said “drive off, drive off,” which he did.  Anderson claimed that he bumped a
curb leaving the scene in the rush.

ADMISSION OF EVIDENCE

            Bible complains that the
trial court abused its discretion by overruling his request for a hearing
outside of the presence of the jury to challenge the in-court identification of
Bible by two witnesses, by allowing testimony from a confidential informant
that was hearsay and violated the Confrontation Clause, and in admitting cell
phone records that were not properly authenticated.

In-Court Identification

            Bible complains that the
trial court erred by denying his re quest to have a hearing outside of the
presence of the jury to determine the admissibility of the anticipated in-court
identifications of him as the perpetrator.  Bible made an oral motion in limine
at the beginning of a day of testimony seeking to find out the basis of each
witness’s identification of Bible at the time that each witness was to be
called to testify.  The trial court denied Bible’s motion.  Bible made no
further objections to the in-court identifications that were made by Miles, one
of two witnesses of which he now complains.  It is well established that an oral
motion in limine does not preserve any error.  Roberts v. State, 220
S.W.3d 521, 533 (Tex. Crim. App. 2004).  The portion of Bible’s issue relating
to Miles is overruled.

            Bible’s other complaint
regarding improper in-court identification was prior to and during the
testimony of Clifton Lewis, who was present at various times throughout the
evening of the murders.  The basis of Bible’s objection prior to the testimony
of Clifton related to the admission of a pretrial lineup that was not in the
possession of the State’s attorney.  Bible objected to any testimony regarding
that lineup on the basis of surprise and failure to disclose in discovery.  The
trial court sustained Bible’s objection and prohibited the State from
referencing that lineup during Clifton’s testimony.  

Later, well after Clifton had identified
Bible before the jury without objection, the State began a line of questioning
about a second lineup which had been presented to Clifton during the
investigation.  The trial court conducted a hearing outside of the presence of
the jury and clarified its ruling and explained to Clifton that he was not to
mention the missing lineup.  Bible did not object on the basis of an
impermissible in-court identification prior to Clifton’s testimony, during the
hearing outside of the jury’s presence, or during Clifton’s testimony before
the jury.  As such, Bible’s objection at trial does not comport with his
complaint in this appeal.  Bible’s objection to Clifton’s in-court
identification is not properly preserved and is waived.  Wilson v. State,
71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (a party’s “point of error on appeal
must comport with the objection made at trial”).  We overrule issue one
(A).          

Confidential Informant Testimony

Bible complains that the trial court
abused its discretion by allowing the investigating Texas Ranger to testify to
names of individuals involved in the Hearne murders that were given to him by
another detective.  That detective had gotten the names from a confidential
informant.  Bible complains that the testimony by the Texas Ranger stating the
names that were given to him was inadmissible hearsay and violated his right to
confrontation.

Hearsay

An out-of-court statement offered into
evidence to prove the truth of the matter asserted is hearsay.  Tex. R. Evid. 801(d).  A statement not
offered to prove the truth of the matter asserted, but offered for some other
reason, is not hearsay.  Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim.
App. 1999); see Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.
1995).  The Court of Criminal Appeals has concluded that if a statement is
introduced to explain how a defendant became a suspect or how the investigation
focused on a defendant, then the statement is not hearsay because it is not offered
for the truth of the matter asserted.  Dinkins, 894 S.W.2d at 347
(holding an appointment book and patient application were not offered for the
truth of the matter asserted, but instead the evidence was offered to show how
the appellant became a suspect of the investigation); Jones v. State,
843 S.W.2d 487, 499 (Tex. Crim. App. 1992), abrogated on other grounds by
Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001) (holding testimony
was not hearsay because it was not offered for the truth of the matter
asserted, but to explain how the police officer began to suspect the appellant,
seek an arrest warrant, and finally arrest him); see also Cano v. State,
3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999, pet. ref’d) (deciding that the
testimony was not being offered to prove drugs were literally being
distributed, but rather to show why the officers focused their investigation on
the appellants).  “This type of testimony assists the jury’s understanding of
the events by providing context for the police officer’s actions.”  Cano,
3 S.W.3d at 110.

            The State’s questions to the
investigator were not designed to elicit hearsay testimony; instead the
questions allowed the investigators to explain the process of the investigation
and how Bible became a suspect.  See Dinkins, 894 S.W.2d at 347; Lee
v. State, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.). 
Accordingly, the trial court did not abuse its discretion in overruling Bible’s
hearsay objections.

Confrontation

The Sixth Amendment to the U.S. Constitution
guarantees the right of an accused in a criminal prosecution to confront the
witnesses against him.  Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim.
App. 2000).  A primary interest secured by the
Confrontation Clause is the right of cross-examination.  Id.  The Confrontation Clause bars out-of-court testimonial
statements by a witness unless the witness is unavailable to testify and the
defendant had a prior opportunity to cross-examine the witness.  Crawford v.
Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The United States Supreme Court has yet
to define the outer boundaries of what constitutes a testimonial out-of-court
statement, but it has identified three kinds of statements
that can be regarded as testimonial: (1) ex parte in-court testimony or its
functional equivalent that declarants would reasonably expect to be used
prosecutorially; (2) statements contained in formalized testimonial materials
such as affidavits, depositions, prior testimony, or confessions; and (3) statements
that were made under circumstances that would lead an objective witness
reasonably to believe that the statement would be available for use at a later
trial.  Langham v. State, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).
 Whether a particular out-of-court statement is
testimonial or not is a question of law.  De La Paz v. State, 273 S.W.3d
671, 680 (Tex. Crim. App. 2008).

The Court of Criminal Appeals has
recently warned against allowing statements into evidence as “background” to
justify testimony that might otherwise be hearsay to avoid a Confrontation
Clause objection.  See Langham, 305 S.W.3d at 580.  However, the Court
noted that “background” evidence, though it may be testimonial, can be
admissible to help give perspective to the jury.  Id.  It is the amount
of detail included in the “background” evidence that becomes problematic.  In
this instance, although there was testimony regarding specific details of the
murders given by the confidential informant to the detective and conveyed to
the Texas Ranger that was presented in the hearing conducted outside of the
presence of the jury, the trial court restricted the admission of the
statements of the confidential informant to three names, which were then used
by law enforcement to further investigate the case.  The admission of the three
names only was admissible for “background” evidence purposes, and its admission
did not violate Bible’s Confrontation Clause rights.  The trial court did not
abuse its discretion in the admission of the three names given by the
confidential informant.  We overrule issue one (B). 

Improper Authentication

            Bible complains that the
trial court erred by admitting cell phone records that were not properly
authenticated pursuant to rules 901 and 902 of the Rules of Evidence.  There
were some cell phone records from Verizon that were admitted during the trial
which were properly authenticated through a live witness.  Those records
pertained to the cell phones that were used that night by Clifton and
Chandell.  No objection was made to the introduction of those records.  Other
cell phone records were admitted into evidence over Bible’s objection that the
business records were not filed with the district clerk fourteen days before
trial as required by rule 902(10).  Tex.
R. Evid. 902(10).  The records admitted from AT&T had an affidavit
attached that was not signed until a date during the trial.  The Sprint/Nextel
records had an unsworn affidavit attached that had been signed approximately
one year earlier; however, the records were not filed with the clerk as
required.  

The State does not dispute that the
records were not on file with the district clerk for fourteen days before the
trial, but contends that their admission was harmless because Bible had copies
of the records before trial.  At the time of the records’ admission, Bible
sought and was granted a running objection to “any testimony regarding these
records.”  The State does not complain about the scope of the running objection
or contend that this error was not preserved.  The admission of the
inadequately authenticated cell phone records was error.

The Court of Criminal Appeals has
recently expressly stated the standard required for an appellate court’s
determination of harm of the erroneous admission of evidence pursuant to rule
44.2(b):

A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury’s verdict.  But if the improperly admitted evidence did
not influence the jury or had but a slight effect upon its deliberations, such
non-constitutional error is harmless.  In making a harm
analysis, we examine the entire trial record and calculate, as much as
possible, the probable impact of the error upon the rest of the evidence.  We consider overwhelming evidence supporting the particular
issue to which the erroneously admitted evidence was directed—here, the “future
dangerousness” special issue—but that is only one factor in our harm analysis.  It is the responsibility of the appellate court to assess harm
after reviewing the record, and the burden to demonstrate whether the appellant
was harmed by a trial court error does not rest on either the appellant or the
State. 

 

Coble v. State, 330 S.W.3d 253, 280 (Tex. Crim. App.
2010) (internal citations omitted).

            Using this standard, we
review the entire record to determine to what degree the evidence supporting
the issue to which the erroneously admitted evidence was directed, which was
the connection between Bible, the accomplices, the witnesses, and the victim, was
affected by the error.  

During the trial, the State referred to
the cell phone records often, from the opening statements through closing
arguments.  The witnesses, when questioned about phone numbers and calls made,
were presented with the erroneously admitted exhibits to reinforce their
testimony.  Specifically, Miles, who used Clifton’s phone to contact Chandell
for Bible, Anderson, and Laws, testified that he had no independent
recollection of the phone numbers involved.  However, the State used the
properly admitted records as well as the erroneously admitted records to
establish the time line of events and to provide a connection between Bible,
Anderson, Laws, Clifton, and Chandell on the night of the murders.  The State
provided the erroneously admitted records to Green, who was Anderson’s mother,
to establish that, in an attempt to reach her son, she called the number linked
to Bible through the records the same night of the murders after the time the
murders were committed.  

During Clifton’s testimony, he
identified his personal cell phone number as well as Chandell’s number without
reference to any of the cell phone records and testified that Miles had used
his phone that night to call Chandell.  The records pertaining to the numbers
used by Clifton and Chandell, and the calls made between them were from the
properly admitted records.  Clifton’s testimony and the properly admitted cell
phone records from his phone number showed calls from the number that Clifton
attributed to Anderson, but that was ultimately believed to be Bible’s number. 
Clifton stated and the properly admitted cell phone records show that he called
that same number after he had heard about the murders and spoke to Anderson.

An investigator then testified that the
number Clifton identified as belonging to Anderson was determined to be
Bible’s.  This determination was made because Bible’s wife had made multiple
calls to that number in the days preceding the murders.  However, Anderson’s
mother testified that she had never called or knew of that number prior to the
murders but had called it that night looking for Anderson.  The investigator
had gotten Bible’s wife’s cell phone number from her during the investigation. 
The records of Bible’s wife’s cell phone number were admitted to provide
additional proof of the connection between her cell phone number and the cell
phone number attributed to Bible.  These records were part of the improperly
admitted records.  Further, the investigator testified that Bible had gotten a
new cell phone less than a day after the murders and referenced one of the
improperly admitted records to establish that fact.  Additionally, the
investigator testified that the old number that they attributed to Bible was
never used again, as was also demonstrated by the improperly admitted cell
phone records.

During argument, the State spent a
significant amount of time reviewing the improperly admitted records with the
jury.  In the opening argument, the State argued that all of the cell phone
records are “evidence that establishes his guilt.”  In the closing argument,
the State referenced the records again but did not go into detail like the
opening argument.  

There is no reporter’s record from voir
dire, so we are unable to review that portion of the record in this analysis,
and must presume that nothing occurred during voir dire that would demonstrate
harm.

There was no physical evidence to link
Bible to the murders.  Anderson’s DNA was located on the tip of a “cigar” found
in the middle of the street where the murders took place.  Anderson, Miles, and
Clifton identified Bible as being present that night, and Anderson testified
that Bible was one of the shooters.  Other witnesses who observed different
events of that night identified one of the individuals present as wearing a red
hoodie, which was confirmed by those who identified Bible directly.  The
records that were properly admitted confirmed portions of Miles’s and Clifton’s
accounts of the events of the evening.  Multiple witnesses, including Anderson,
Miles, and several unrelated bystanders throughout the evening’s events
identified a tan/gold colored vehicle, which was identified by the witnesses
through photographs as being Bible’s wife’s gold Chevrolet Malibu.  

Without those phone records in evidence,
the State’s case may have been less persuasive.  However, we believe that the
other properly admitted evidence linking Bible to the cell phone numbers of
Clifton and Chandell tends to negate the likelihood that the jury’s decision of
guilt relied in any significant way on the erroneously admitted phone records
rendered the error harmless.  See Lane v. State, 151 S.W.3d 188, 193
(Tex. Crim. App. 2004); see also Anderson v. State, 717 S.W.2d 622, 627
(Tex. Crim. App. 1986) (“If the fact to which the hearsay relates is
sufficiently proved by other competent and unobjected-to evidence, . . . the
admission of the hearsay is properly deemed harmless and does not constitute
reversible error”).  We overrule issue one (C).

IMPROPER JURY ARGUMENT

            Bible complains that the
trial court erred by overruling his objection to the improper jury argument by
the State regarding: (1) the presumption of innocence, and (2) asking the jury
to put themselves in the victim’s place. 

Standard of Review—Jury Argument

Permissible jury argument generally
falls into one of four areas: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) an answer to the argument of opposing counsel;
or (4) a plea for law enforcement.  Brown
v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); Berry v. State,
233 S.W.3d 847, 859 (Tex. Crim. App. 2007).  

            “Even when an argument
exceeds the permissible bounds of these approved areas, such will not
constitute reversible error unless, in light of the record as a whole, the
argument is extreme or manifestly improper, violative of a mandatory statute,
or injects new facts harmful to the accused into the trial proceeding.”  Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing Todd v.
State, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)).  “The remarks must
have been a willful and calculated effort on the part of the State to deprive
appellant of a fair and impartial trial.”  Id. (citing Cantu v. State,
939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).  

            When analyzing any harm that
may have been caused by an improper jury argument, we examine the following
factors: (1) the severity of the misconduct (the magnitude of the prejudicial
effect of the prosecutor’s remarks); (2) measures adopted to cure the
misconduct (the efficacy of any cautionary instruction by the judge); and (3)
the certainty of conviction absent the misconduct (the strength of the evidence
supporting the conviction).  Ramon v. State, 159 S.W.3d 927, 929 (Tex.
Crim. App. 2004) (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998) (op. on reh’g)).

In analyzing the
State’s remarks during closing argument, we must not consider the statement in
isolation; instead, we must review the closing arguments of both parties in
order to determine the context in which the complained-of statements were
made.  See Wilson v. State, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996)
(“The applicable legal standard of review is whether, in light of the record as
a whole, there is a reasonable possibility the improper argument might have
contributed to appellant’s conviction.”).

Presumption of Innocence

In the State’s closing argument in the
guilt-innocence phase of the trial, the following exchange took place:

State:               Now, the
presumption of innocence.  The presumption of innocence is there.  It’s like a
[sic] vail over the Defendant.  They’re covered with a sheet, or as I said in
voir dire, it’s like a glass bottle that contains the presumption, but when the
State brings forth evidence and strikes that glass with a hammer, the presumption
of innocence dissipates, and it’s gone.  When that [sic] vail is jerked off
this Defendant, the presumption of innocence is gone, and I submit to you,
based on the evidence that you’ve heard in this courtroom, the presumption of
innocence has been long gone.  It was gone early on, and it continued to be
gone, and it never came back.  The State, based on the evidence, destroyed the
presumption of innocence in this case long ago.  It doesn’t remain with the
Defendant throughout trial.

 

Bible:              Objection.  That’s a
misstatement of law.  It does remain with him up to this point unless the State
has proven beyond a reasonable doubt.

 

Trial Court:   Overruled.  Proceed with
your argument.

 

The presumption of innocence does not
end when the presentation of evidence closes; instead, the presumption remains
until the jury enters the jury room to deliberate.  Miles v. State, 154
S.W.3d 679, 681-81 (Tex. App.—Houston [14th Dist.] 2004) aff’d, 204
S.W.3d 679 (Tex. Crim. App. 2006) (citing Massey v. State, 226 S.W.2d
856, 860 (Tex. Crim. App. 1950) and McGrew v. State, 143 S.W.2d 946, 947
(Tex. Crim. App. 1940)).  The trial court erred when it overruled Bible’s
objection regarding the argument about the meaning and effect of the
presumption of innocence.  

Having found error, we must analyze the
error for harm.  The improper argument regarding the presumption of innocence
is constitutional error.  Miles, 154 S.W.3d at 681.  Under Rule 44.2(a),
we must determine whether, beyond a reasonable doubt, the error contributed to
Bible’s conviction.  Tex. R. App. P.
44.2(a).  The charge to the jury contained a paragraph which stated: “All
persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt.”
 That paragraph later stated: “The law does not require a defendant to prove
his innocence or produce any evidence at all.  The presumption of innocence
alone is sufficient to acquit the defendant, unless the jurors are satisfied
beyond a reasonable doubt of the defendant’s guilt after a careful and
impartial consideration of the evidence in this case.” 

We find that any harm from the trial
court’s error with regard to the presumption of innocence would have been
lessened, if not altogether erased, both by the charge and by the presumption
that the jury followed the instructions in the jury charge.  See Miles v.
State, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) (citing Resendiz v.
State, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) and Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998).  Furthermore, although by law the
presumption of innocence carries into the jury room, we recognize that it is
continually rebutted and eroded throughout the trial by the presentation of
contrary evidence by the State.  Miles, 154 S.W.3d at 681-81.  

In Miles, the Court of Criminal
Appeals clarified the concept of “presumption of innocence” as follows:

Under the Due Process Clause of the
Fourteenth Amendment, an accused in state court has the right to the “presumption
of innocence,” i.e., the right to be free from criminal conviction unless the
State can prove his guilt beyond a reasonable doubt by probative evidence
adduced at trial.  Taylor v. Kentucky, 436 U.S. 478, 483 n. 12, 485-486,
98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978); Madrid v. State, 595 S.W.2d
106, 110 (Tex. Crim. App. 1979).  When a jury is told of the presumption, it is
told, in effect, to judge an accused’s guilt or innocence solely on the basis
of the evidence adduced at trial and not on the basis of suspicions that may
arise from the fact of his arrest, indictment, or custody.  Bell v. Wolfish,
441 U.S. 520, 533, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

 

Miles, 204 S.W.3d at 825.  The State never contended that it did
not have the burden of proof at all times.  This also reduces the likelihood
that Bible was harmed by the improper statements by the State.  We also note
that the improper comments by the State were not referenced again, and after
Bible’s objection, the State moved on, which would also lessen the potential
harm suffered by Bible.  After a thorough review of the record, we find beyond
a reasonable doubt that the erroneous argument did not contribute to Bible’s
conviction.

Placing the Jury in the Victim’s Shoes

            Bible further complains of
the following comments by the State during the guilt-innocence phase of the
trial:  “And somebody just happens to be coming out the front door of the
school, walking to their car, and stops, ‘What’s going on?’  ‘Bam, bam, bam,’
and down they go.  It could be in the parking lot of a convenience store, it
could have been me, could have been you, one of you.”  Bible objected that the
State was improperly seeking to have the jury put themselves in the shoes of
the victim.  The argument of which Bible complains does not fit into any of the
four categories of permissible jury argument; it is rather a plea for
abandonment of objectivity.  See Brandley v. State, 691 S.W.2d 699, 712
(Tex. Crim. App. 1985).  We agree with Bible that the trial court erred in
overruling the objection.

Since we have determined that the
State’s argument was improper and that the trial court should have sustained
Bible’s objection and thus erred, we must conduct a harm analysis.  We will
first look at the severity of the misconduct.  The State’s comment came during
a description of the circumstances surrounding the murder of Monson.  While the
error did have some severity, we find that it was not great.  The comment was
made in the context of the State’s argument regarding one of the victims as
being nothing more than an innocent bystander and suggesting it could have been
any one of them.  However, while Monson was not involved with the transaction
between Chandell and Bible, he was at the house where drug activity was taking
place and was using drugs himself.  The jury would be unlikely to place
themselves in the shoes of Monson.  

Secondly, we review any measures to cure
the misconduct.  While the trial court ultimately overruled Bible’s objection,
the trial court did first admonish the State to “stay within the record.” 
Although only a slight measure that does little to cure the improper comment,
nevertheless it served to mitigate the effect, if any, of the improper
argument.

Third, we look to the certainty of
Bible’s conviction absent the improper argument.  After reviewing the entire
record, we find that the evidence was such that Bible’s conviction was not
affected by the error.  We find that while the argument was improper, and thus
erroneously allowed, the error was harmless.  We overrule issue two. 

CORROBORATION OF ACCOMPLICE WITNESS
TESTIMONY

Bible complains in his third issue that
the accomplice testimony of Anderson was not sufficiently corroborated, and
that when the evidence is considered without Anderson’s testimony the evidence
is factually insufficient.[1] 
Bible’s convictions cannot stand on the testimony of one of Bible’s accomplices
unless that testimony is corroborated by other evidence tending to connect
Bible with the offenses.  Tex. Code
Crim. Proc. Ann. art. 38.14 (Vernon 2005).  To corroborate accomplice
testimony, we eliminate “all of the accomplice testimony from consideration and
then examine the remaining portions of the record to see if there is any
evidence that tends to connect the accused with the commission of the crime.”  Castillo
v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (citing Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).  “The corroborating
evidence need not be sufficient by itself to establish guilt; there simply
needs to be ‘other’ evidence ‘tending to connect’ the defendant to the
offense.”  Id.  The accomplice-witness rule is of statutory origin and
differs from sufficiency standards because it is not derived from federal or
state constitutional principles.  Druery v. State, 225 S.W.3d 491, 498
(Tex. Crim. App. 2007).   

Excluding the accomplice’s testimony,
the corroborating evidence that favors the verdict included (1) the properly
admitted cellular telephone records showing telephone calls to and from numbers
tied to Bible, Clifton, and Chandell; (2) the witnesses’ identifications of
Bible, both through pre-trial lineups and at trial; (3) the multiple witnesses’
identifications of the gold Malibu that belonged to Bible’s wife as being the
vehicle that was the getaway vehicle after the shootings; (4) the damage to the
undercarriage of the gold Malibu as being consistent with other testimony
regarding the vehicle scraping the curb while fleeing the scene after the
murders; and (5) the testimony from a relative of Bible that Bible confessed to
his involvement in the murders.  We find that other evidence sufficiently
tended to connect Bible with the offense, and, therefore, to corroborate the
accomplice witness’s testimony.  We overrule issue three.

 

CONCLUSION

            Having found no reversible
error, we affirm the judgment of the trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed May 11, 2011

Do
not publish

[CRPM]









[1]
 We note that the factual sufficiency standard set forth in Clewis v. State
has been overruled.  See Brooks v. State, 323 S.W.3d 893, 895 (Tex.
Crim. App. 2010) (plurality op.).  Bible’s brief on the merits was filed prior
to the issuance of that decision; however, since a factual sufficiency review
excluding the accomplice’s testimony is not the proper standard, it is not
necessary to address the factual sufficiency review portion of Bible’s issue.