IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-0436-05






OPAL KATE MILES, a/k/a KATE O. MILES, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and Meyers,
Price, Womack, Keasler, Hervey, and Cochran, JJ., joined. Johnson, J., concurred
in the result.

 


 We granted appellant's petition for discretionary review in order to determine whether the
court of appeals erred in its harmless-error review. We hold that the court of appeals did not err.

 Our discussion begins with a summary of the relevant facts. In May 2002, a Harris County
grand jury returned an indictment charging appellant with felony aggregated theft under Texas Penal
Code §§ 31.03(a) and 31.09. In August 2003, the State brought appellant to trial before a petit jury
on her plea of not guilty. At the guilt stage of that trial, the State presented nine witnesses and
numerous exhibits, and appellant presented eight witnesses and a few exhibits. 

 The State's evidence at the guilt stage, if believed, established the following: From
September 1997 through February 2000, appellant was employed as the bookkeeper for Hope
Village, a private residential community for mentally retarded children, in Friendswood. Appellant's
duties included managing all of Hope Village's finances, including its payroll. During the period
in question, appellant, without authorization from her superiors, awarded herself a substantial
retroactive pay raise, numerous paychecks in addition to the ones to which she was regularly entitled,
and numerous checks in "reimbursement" for expenditures she never actually made. Appellant also
failed, on many occasions, to make the proper deductions from her pay for federal taxes and health
insurance. An independent audit conducted in 1999 revealed that appellant had misappropriated,
altogether, more than $50,000 of Hope Village's funds.

 Appellant's only significant defensive evidence at the guilt stage was her own testimony, in
which she denied any wrongdoing. In particular, appellant insisted that her superior at Hope Village
had authorized her retroactive pay raise as well as certain unspecified "bonuses," that the
"reimbursement" checks had all been legitimate, and that she had "always paid [her] withholding." 
Appellant could not explain much of the evidence against her, however.

 During appellant's closing argument at the guilt stage, the following transpired:

 Defense Counsel: One thing I do want to remind you of at this time is that there is a
presumption of innocence throughout the trial. At this point in time, by law, my
client is presumed to be innocent. And that -

 

 The State: Judge, I'm going to object to that. Not after the trial's over, I wouldn't
think. That's the presumption before the trial starts.

 

 The Court: Sustained.

 

 Defense Counsel: Well, this jury has not rendered its verdict. And until you render
[your] verdict, that presumption of innocence, I render [sic] to you, is in effect.

 

 The State: I object to that as not being a proper statement of the law.

 

 The Court: Sustained. Let's move on.


 The trial court's written charge to the jury at the guilt stage included the following
admonition:

 "A Grand Jury indictment is the means whereby a defendant is brought to trial
in a felony prosecution. It is not evidence of guilt nor can it be considered by you in
passing upon the question of guilt of the defendant. The burden of proof in all
criminal cases rests upon the State throughout the trial and never shifts to the
defendant.

 "All persons are presumed to be innocent and no person may be convicted of
an offense unless each element of the offense is proved beyond a reasonable doubt. 
The fact that she has been arrested, confined, or indicted for, or otherwise charged
with the offense gives rise to no inference of guilt at her trial. The law does not
require a defendant to prove her innocence or produce any evidence at all. The
presumption of innocence alone is sufficient to acquit the defendant, unless the jurors
are satisfied beyond a reasonable doubt of the defendant's guilt after careful and
impartial consideration of all the evidence in the case.

 "The prosecution has the burden of proving the defendant guilty and it must
do so by proving each and every element of the offense charged beyond a reasonable
doubt and if it fails to do so, you must acquit the defendant."


 After deliberating, the jury found appellant guilty as charged in the indictment. The jury later
assessed appellant's punishment at imprisonment for nine years and a fine of $2,500.

 On direct appeal, appellant argued that she had been denied due process of law, in violation
of the Fourteenth Amendment, by reason of the trial court's ruling sustaining the State's objection
concerning the presumption of innocence. In particular, appellant argued that the trial court's ruling
effectively instructed the jury that, at the close of the evidence, she was no longer presumed
innocent. With its ruling, appellant's argument continued, "the trial [court] effectively commented
on the weight of the evidence, saying that, yes, indeed, the evidence was strong enough to overcome
the presumption that appellant was innocent." 

 The court of appeals agreed with appellant that the trial court had erred, but the court of
appeals held that the error had been harmless beyond a reasonable doubt:

 "In this case, the trial court committed [constitutional] error when it sustained
the State's objection regarding the presumption of innocence. According to the
precedent laid out in McGrew [v. State, 143 S.W.2d 946, 946-947 (Tex.Crim.App.
1940),] and later followed in Massey [v. State, 226 S.W.2d 856, 860 (Tex.Crim.App.
1950)], the presumption of innocence does not end when the presentation of evidence
closes . . . . 

 * * *


 ". . . Any harm from the [trial] court's error with regard to the presumption
of innocence would have been lessened, if not altogether erased, both by the [jury]
charge and by the presumption that the jury followed the instructions in the jury
charge.

 * * *


 "Taking into account both the evidence presented against the appellant and
the fact that the jury had already been charged [correctly] as to the presumption of
innocence, we can say beyond a reasonable doubt that the error committed by the trial
court did not contribute to the appellant's conviction. We therefore affirm the
judgment of the trial court." Miles v. State, 154 S.W.3d 679, 680-683
(Tex.App.-Houston [14th Dist.] 2004).


 In a motion for rehearing, appellant, citing Sullivan v. Lousiana, 508 U.S. 275 (1993), argued 
that the trial court's error had been "structural" and, therefore, not subject to harmless-error review. 
Her argument proceeded as follows:

 "The error in this case is akin to a deficient reasonable doubt instruction [like
the one in Sullivan] because the trial court [in effect] instructed the jury that the
presumption of innocence no longer existed, which [was] like saying that the burden
of proof no longer exist[ed]. By instructing the jury that the presumption of
innocence no longer exist[ed], the trial court [was] in effect saying the burden of
proof no longer exist[ed] because it ha[d] already [been] met. A jury charge that has
a constitutionally deficient reasonable-doubt instruction is structural error [under
Sullivan]. Therefore, the court should reverse and remand for a new trial without
engaging in a harmful error analysis."


 The court of appeals denied appellant's motion for rehearing without issuing a written opinion.

 Appellant later filed a petition for discretionary review, which we granted. In her petition
and accompanying brief, appellant argues that the court of appeals erred in holding that the trial
court's error had been harmless beyond a reasonable doubt. More specifically, appellant argues that
(1) under Sullivan v. Louisiana, the trial court's constitutional error was a "structural defect" not
subject to harmless-error review; (2) the trial court's error, even if not a structural defect, was
nonetheless not harmless beyond a reasonable doubt because it amounted to a judicial admonishment
that, at the close of the evidence, appellant was no longer presumed innocent; and (3) in any event,
the court of appeals failed to utilize the required "totality of the circumstances" standard of harmless-error review.

 Under the Due Process Clause of the Fourteenth Amendment, an accused in state court has
the right to the "presumption of innocence," i.e., the right to be free from criminal conviction unless
the State can prove his guilt beyond a reasonable doubt by probative evidence adduced at trial. 
Taylor v. Kentucky, 436 U.S. 478, 483 n. 12, 485-486 (1978); Madrid v. State, 595 S.W.2d 106, 110
(Tex.Crim.App. 1979). When a jury is told of the presumption, it is told, in effect, to judge an
accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis
of suspicions that may arise from the fact of his arrest, indictment, or custody. Bell v. Wolfish, 441
U.S. 520, 533 (1979).

 Justice Hudson observed correctly, in his concurring opinion in this case in the court of
appeals, that the presumption of innocence, as it exists in a court of law, 

 ". . . is not a presumption at all in the legal sense; the term presumption of
innocence is merely an inaccurate, shorthand description of the right of the criminal
defendant to remain inactive and secure, until the prosecution has taken up its burden
and produced evidence.

 "Thus, when defense counsel [in this case] said 'my client is presumed to be
innocent,' he was saying no more than that the burden of proof rests entirely upon the
State. Moreover, that burden remains upon the State throughout the trial until the
jury reaches a verdict." Miles v. State, 154 S.W.3d at 683 (Hudson, J., concurring)

 (citations and internal quotes omitted).


 Thus, as the State now concedes, it was wrong in objecting, during closing argument at the
guilt stage of appellant's trial, to her still being "presumed innocent" at that point, and the trial court
committed constitutional error when it sustained the State's objection. The question remaining is
whether the trial court's error requires reversal of that court's judgment of conviction. 

 In Chapman v. California, 386 U.S. 18, 22 (1967), the United States Supreme Court held that
some constitutional errors, in the setting of a particular case, "are so unimportant and insignificant
that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the
automatic reversal of the conviction." The Court went on to hold that before a federal constitutional
error may be deemed harmless, the reviewing court must be able to declare a belief beyond a
reasonable doubt that the error did not contribute to the verdict obtained. Id. at 24. In later cases,
the Court made it clear that a federal constitutional error "contributes" to the verdict obtained if it
materially affects the jury's deliberations to the defendant's detriment. See, e.g., Satterwhite v.
Texas, 486 U.S. 249, 256 (1988).

 In Arizona v. Fulminante, 499 U.S. 279, 307 (1991), the Supreme Court recognized that the
Chapman harmless-error rule is applicable only to "trial errors," i.e., isolated and limited errors
which occurred during the presentation of the case to the trier of fact, and which may, therefore, be
"quantitatively assessed" in the context of the entire trial. The harmless-error rule may not be
applied to "structural defect[s] affecting the framework within which the trial proceeds," because
such structural defects have inherently indeterminate effects on trial proceedings. Id. at 310. 
Examples of such "structural defects" include "the total deprivation of the defendant's right to
counsel at trial, partiality by the judge presiding over the trial, denial of the right to self-representation at trial, exclusion of members of the defendant's race from the indicting grand jury,
and denial of the right to a public trial." G. Dix & R. Dawson, Texas Practice: Criminal Practice
and Procedure § 43.563 (2d ed. 2001) (citations omitted). See also Annual Review of Criminal
Procedure, 35 Geo. L. J. 834-841 (2006) (citing cases on structural defects). 

 Before a reviewing court may apply the harmless-error rule to an error, it must, of course,
decide whether the error is a "trial error" subject to the harmless-error rule. Texas Rule of Appellate
Procedure 44.2(a) recognizes this: "If the appellate record in a criminal case reveals constitutional
error that is subject to harmless error review, the court of appeals must reverse a judgment of
conviction or punishment unless the court determines beyond a reasonable doubt that the error did
not contribute to the conviction or punishment." (Emphasis added.) When the court of appeals in
this case applied the harmless-error rule to the constitutional error in question, that court held
implicitly that the error was a "trial error" and not a "structural defect."

 As we noted previously, appellant, citing Sullivan v. Louisiana, argues that the trial court's
error in this case was a structural defect and that, therefore, the court of appeals erred in applying the
Chapman harmless-error rule to it. We disagree. In our view, the trial court's error did not rise to
level of a structural defect; rather, it was a classic trial error that occurred during jury argument,
isolated and apparently limited in its impact, and, as we will show, readily subject to a quantitative
assessment for harm within the context of the entire trial.

 Appellant's reliance upon Sullivan is misplaced. In that case, the jurors were erroneously
given written instructions that could have been reasonably interpreted to allow a finding of guilt
based on a degree of proof less than beyond a reasonable doubt. The question before the Supreme
Court was whether that constitutional error was subject to the Chapman harmless-error rule. The
Court held that it was not, for two reasons. First, the Court explained that, under the Chapman
harmless-error rule, the relevant inquiry was whether the guilty verdict obtained "was surely
unattributable to the error." Since the Sixth Amendment required a jury verdict of guilty beyond a
reasonable doubt, the Court continued, a jury charge of the sort given in Sullivan did not even
produce a "guilty verdict" within the meaning of the Sixth Amendment. "There being no jury verdict
of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless." 
Sullivan v. Louisiana, 508 U.S. at 280 (emphasis in original). Second, the Court explained that the
erroneous jury charge had the effect of denying the defendant his right to trial by jury. "The
deprivation of that right," the Court continued, had "consequences that [were] necessarily
unquantifiable and indeterminate" and "unquestionably qualifie[d] as 'structural error' [not subject
to the harmless-error rule]." Id. at 281-282.

 The reasoning in Sullivan is not applicable to the instant case. Here, the jurors were not
given an erroneous instruction, either written or oral, that might have led them to convict on the basis
of a degree of proof less than beyond a reasonable doubt. Indeed, appellant's jury was given
completely accurate and thorough written instructions concerning the State's burden of proof and
the requisite standard of proof. The most that can be said is that appellant's jury heard the trial court
erroneously sustain, in rapid succession, two prosecutorial objections that, from a lay juror's point
of view, probably were of uncertain significance. Any uncertainty in the jurors' minds created by
the trial court's actions most likely was cleared up by the written jury charge. The error here was
certainly not so pervasive that it vitiated the jury's guilty verdict for Sixth Amendment purposes or
denied appellant her right to a trial by jury.

 Having held that the trial court's error was not a structural defect, we turn to the question of
whether the error was harmless. After examining the entire record, we agree with the court of
appeals that the error was harmless beyond a reasonable doubt. Our conclusion is based on several
factors. First, the exchange in question between the parties and the trial court was brief and not
without ambiguity, with the trial court saying no more than "sustained" (twice) and "let's move on." 
Given the context, we doubt that the jury placed much significance on the exchange. Second, the
State, in its objections to defense counsel's argument, never denied that it had the burden to prove
appellant's guilt beyond a reasonable doubt, and, in our view, the jury would not have so interpreted
the State's objections. Third, the trial court's charge to the jury included an accurate and thorough
explanation of the presumption of innocence and what it means in a court of law, and, in the absence
of evidence to the contrary, we will assume that the jury followed its written instructions. See
Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998). Fourth, the State's evidentiary case
against appellant was strong (1) and her defense relatively weak. In sum, we can, and do, declare our
belief beyond a reasonable doubt that the trial court's error did not materially affect the jury's
deliberations to appellant's detriment and, thus, did not contribute to the verdict obtained. 

 We turn finally to appellant's argument that the court of appeals failed to utilize the required
"totality of the circumstances" standard of harmless-error review. We agree with appellant that an
appellate court must examine the record as a whole when engaged in a harmless-error review. 
Indeed, "one can hardly evaluate the impact of an error upon a jury decision without considering the
totality of the case before the jury." W. LaFave, et al., Criminal Procedure § 27.6(b) at 943 (2d ed.
1999). Nevertheless, we see nothing in the court of appeals' opinion that indicates that that court
did not consider the totality of the record when it performed its harmless-error review. Moreover,
since we agree with the court of appeals that the trial court's error was harmless beyond a reasonable
doubt, any deficiency in the court of appeals' analysis is of no moment.

 We affirm the judgment of the court of appeals.


DELIVERED OCTOBER 25, 2006

PUBLISH
1. The State's witnesses included the administrator of Hope Village, the president of the
foundation that oversaw Hope Village, a fraud examiner from the Harris County District
Attorney's Office, the accountant who performed the independent audit of Hope Village's
finances, and five of appellant's co-workers at Hope Village. The testimony of these witnesses,
taken as a whole, strongly indicated appellant's guilt.