**Opinion issued October 4, 2012**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-11-00281-CR

———————————

**STEPHON CHARLES CRUISE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1259792**

**MEMORANDUM OPINION**

A jury convicted appellant, Stephon Charles Cruise, of assault by choking a person with whom he had a dating relationship.[1]  The trial court assessed his punishment at thirty-five years' confinement.  In five issues, appellant argues that:

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(2) (Vernon 2011).

(1)–(2) the trial court erred in sustaining the State's objection to his description of the presumption of innocence in violation of the Fourteenth Amendment of the United States Constitution and the due course of law provisions of the Texas Constitution; (3)–(4) the trial court erred in forbidding him from advancing his only theory for acquittal, in violation of the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution; and (5) the judgment of conviction reflects the incorrect degree of offense.

We modify the judgment and affirm as modified.

## Background

On April 6, 2010, Duvarra Hollins, the complainant, got into an argument with appellant, her boyfriend, about the use of her car. Appellant drove Hollins to her college class, and he then took the car after dropping her off. When Hollins arrived home that night, she argued with appellant again about the use of her car.

Hollins testified that during the argument, appellant burned her temple with a lighter. The argument continued into the bedroom where appellant grabbed Hollins by the throat and choked her for "two to three minutes," causing her to lose consciousness. When Hollins regained consciousness, appellant was standing over her and he began choking her again. Appellant stopped choking Hollins and left the apartment when her son began knocking on the bedroom door. After appellant

2

left, taking the keys to Hollins' car, Hollins called the police to report the assault and her stolen car.

Hollins testified that, following her call to the police, appellant returned to the apartment several times. He kicked her front door and yelled threats. Hollins placed several other 9-1-1 calls regarding appellant's threats, her stolen car, and appellant's appearances to kick her front door. Police eventually arrived and took a report regarding the missing vehicle, and Officer D. King, with the family violence unit, contacted Hollins to follow up on the reported assault. On April 9, 2010, several days after the assault, Officer King again interviewed Hollins and took photographs of her injuries. Officer King testified that he observed injuries on Hollins' body consistent with her report of the assault. The trial court admitted into evidence the photographs that Officer King had taken. Other officers testified regarding damage to Hollins' front door and the recovery of her car, which had been totaled.

Hollins' son and brother both testified regarding the events of April 6. Hollins' son, Steven Jackson, testified that he observed Hollins and appellant arguing and that he became concerned when he could no longer hear them. He went downstairs to check on Hollins, and he saw her with her hair "messed up." Jackson also testified that he observed appellant return to the apartment to kick the front door and to yell at Hollins. Hollins' brother, Deezra Watley, testified that

Hollins called him after appellant left and asked him to come over. Watley testified that he was aware that appellant had gotten "rough" with Hollins and had taken the keys to her car, and Hollins wanted Watley to stay to "make sure nothing happened to her kids and herself." He testified that Hollins did not tell him the details of the assault at that time, but she "seemed terrified at the moment," and her kids "seemed pretty scared, too." Watley also observed appellant kicking Hollins' apartment door, and he stated that everyone in the apartment was "just scared."

Following the State's presentation of evidence, both sides rested. During appellant's closing argument, the following exchange occurred:

[appellant]: The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of a defendant's guilt after careful and impartial consideration of all the evidence in the case. Remember in voir dire I spoke to you briefly about the presumption of innocence and how important it is, and I told you that you must presume him to be innocent until and unless the State proves their case beyond a reasonable doubt. You must continue to give them that presumption unless you're convinced that the State has proved their case beyond a reasonable doubt each and every elements [sic]. Otherwise, the presumption of innocence must prevail. That must be what guides you to the verdict of not guilty.

[State]: Objection, Your Honor, misstatement of the law. The presumption of innocence only exists until there is evidence presented, and there has been evidence presented in this case.

4

| | |
|---|---|
| [Court]: | Sustained. |
| [appellant]: | What I didn't talk to you about in your voir dire . . . is the matter of common sense when you serve on a jury . . . . I'm going to ask you to apply your common sense to what was presented to you from the witness stand and in the—the other evidence, the photos, for example, I'm going to ask you if you think—using your common sense, do you think Duvarra Hollins was actually injured so badly? Was Duvarra actually choked so severely, so strongly to the point where she was rendered unconscious? |
| [State]: | Objection, Your Honor. That's not the standard. Choke until he impeded her breath or blood circulation. |
| [Court]: | All right. The jury will be guided by what they heard and the law that's in the charge. |

The trial court also read the entirety of the written charge to the jury. It states, in pertinent part:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case . . . . In the event that you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

5

The jury found appellant guilty, and the trial court assessed punishment at thirty-five years' confinement for the offense.

The indictment contained a paragraph alleging that appellant was guilty of a prior assault against a family member, which would have enhanced the offense from a third-degree felony to a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-1) (Vernon 2011). However, the State abandoned that allegation prior to appellant's sentencing and presented no evidence regarding the alleged prior offense of assault against a family member. The trial court's judgment reflected that appellant was convicted of a second-degree felony rather than a third-degree felony.

**Improper Jury Argument**

*A. Presumption of Innocence*

In his first and second issues, appellant contends that the trial court erred in sustaining the State's objection to defense counsel's characterization of the presumption of innocence during closing arguments.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp. 2011); *see also Miles v. State*, 204 S.W.3d 822, 825 (Tex. Crim. App. 2006) ("[A]n accused in state court has the right to the 'presumption of innocence,' *i.e.*, the right to be free from

criminal conviction unless the State can prove his guilt beyond a reasonable doubt by probative evidence adduced at trial.") (citing *Taylor v. Kentucky*, 436 U.S. 478, 483 & n.12, 98 S. Ct. 1930, 1934 & n.12 (1978)). "When a jury is told of the presumption, it is told, in effect, to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody." *Miles*, 204 S.W.3d at 825. The burden of proof "rests entirely upon the State" and "that burden remains upon the State throughout the trial until the jury reaches a verdict." *Id.* (quoting *Miles v. State*, 154 S.W.3d 679, 683 (Tex. App.—Houston [14th Dist.] 2004) (Hudson, J., concurring), *aff'd*, 204 S.W.3d 822 (Tex. Crim. App. 2006)); *see also McGrew v. State*, 143 S.W.2d 946, 946 (Tex. Crim. App. 1940) (stating defendant is presumed innocent "until the jury has concluded his guilt from the facts of the case").

Error normally occurs when a trial court makes a mistake. *Hawkins v. State*, 135 S.W.3d 72, 76 (Tex. Crim. App. 2004). When a trial court commits error, a harm analysis is appropriate. *See id.* The Court of Criminal Appeals has previously held that a trial court's improper decision to sustain an objection to a correct statement of the presumption of innocence during closing argument is constitutional error that must be reviewed to determine whether the error was harmless beyond a reasonable doubt. *Miles*, 204 S.W.3d at 826–27. Texas Rule of

7

Appellate Procedure 44.2(a) requires reversal in cases in which constitutional error is committed "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.* at 826 (quoting TEX. R. APP. P. 44.2(a)).

If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see also Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S. Ct. 1792, 1797 (1988) ("[I]f the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand."). The court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Wesbrook*, 29 S.W.3d at 119; *Miles v. State,* 918 S.W.2d 511, 517 (Tex. Crim. App. 1996). The presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook*, 29 S.W.3d at 119; *Moreno v. State,* 858 S.W.2d 453, 466 (Tex. Crim. App. 1993). In conducting such a review, we must consider the "totality of the circumstances" by examining the record as a whole. *See Miles*, 204 S.W.3d at 828.

We presume that the jury followed the instructions in the jury charge. *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003); *Colburn v. State*,

8

966 S.W.2d 511, 520 (Tex. Crim. App. 1998). This presumption can be rebutted, but there must be some evidence to show the jury acted contrary to the jury charge instructions. *See Colburn*, 966 S.W.2d at 520.

In *Miles*, the Court of Criminal Appeals addressed a similar situation. During Miles' closing argument, the State objected on two occasions to Miles' correct statements regarding the presumption of innocence, and, on one occasion, it stated that the presumption of innocence applies "before the trial starts." *Miles*, 204 S.W.3d at 823–24. The trial court sustained both of the State's objections. *Id.* The Court of Criminal Appeals held that the State "was wrong in objecting, during closing argument at the guilt stage of appellant's trial, to her still being 'presumed innocent' at that point, and the trial court committed constitutional error when it sustained the State's objection." *Id.* at 826.

The court then conducted a harmless error analysis and concluded that the error was harmless beyond a reasonable doubt. *Id.* at 827. The court cited the following factors: "the exchange in question between the parties and the trial court was brief and not without ambiguity, with the trial court saying no more than 'sustained' (twice) and 'let's move on'"; the State "never denied that it had the burden to prove appellant's guilt beyond a reasonable doubt"; the written charge "included an accurate and thorough explanation of the presumption of innocence," and there was no evidence that the jury did not follow the written instructions; and

9

finally, "the State's evidentiary case against appellant was strong and her defense was relatively weak." *Id.* at 827–28.

Here, as in *Miles*, the State admits, and we agree, that the trial court committed a constitutional error when it sustained the State's objection that argued the presumption of innocence only exists until evidence is presented. *See id*. at 826. We must now determine whether the error committed requires reversal. *See* TEX. R. APP. P. 44.2(a) (providing that unless we can determine beyond reasonable doubt that error did not contribute to conviction or punishment of defendant, judgment must be reversed).

After examining the entire record, we conclude that the error was harmless beyond a reasonable doubt. As in *Miles*, the error occurred in a single, brief exchange between the parties and the trial court, in which the trial court said no more than "sustained" in response to the State's objection. *See Miles*, 204 S.W.3d at 827 ("Given the context, we doubt that the jury placed much significance on the exchange."). Furthermore, just moments later, following the State's objection to appellant's description of the standard for choking, the trial court instructed the jury to be guided by "the law that's in the charge."

Just as in *Miles*, the State never denied its burden to prove appellant's guilt beyond a reasonable doubt, and appellant was allowed to make that argument during his closing statement without objection. *See id.* The written jury charge,

10

which the trial court had previously read aloud, contained a "thorough and correct" statement of the presumption of innocence and instructed the jury to acquit if it had reasonable doubt after considering all of the evidence presented. Although appellant argues that "the error here was imputed to the charge itself" because "defense counsel read directly from the charge [when] the State made an erroneous statement, which the trial court endorsed," there is no evidence that the jurors failed to follow the written instructions in the jury charge, so we must presume that they did. *See id.*; *Colburn*, 966 S.W.2d at 520.

Finally, the evidence against appellant was strong. Contrary to appellant's argument that the evidence was essentially a "swearing match" between appellant and Hollins, the State presented the testimony of multiple witnesses and photographs corroborating Hollins' testimony about the assault. In addition to Hollins' own testimony, her son testified that he observed appellant and Hollins arguing and that he saw Hollins' hair "messed up." Hollins' son and brother both testified that they observed appellant return to Hollins' apartment and kick the door. The responding officer testified that he observed damage to Hollins' front door, and Officer King testified that, three days after the assault, he observed Hollins' injuries, which were consistent with her reported assault. The photographs taken by Officer King were admitted for the jury to consider. *See*

11

*Miles*, 204 S.W.3d at 828 ("The State's evidentiary case against appellant was strong and her defense relatively weak.").

Given the totality of the circumstances, we hold that, beyond a reasonable doubt, the trial court's error did not materially affect the jury's deliberations to appellant's detriment and, thus, did not contribute to the verdict obtained. *See id.*

We overrule appellant's first and second issues.

### B. Right to Counsel

In his third and fourth issues, appellant contends that the trial court's ruling sustaining the State's objection on the presumption of innocence violated his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 10, of the Texas Constitution.

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *David v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). Prohibiting counsel from making an argument that he was entitled to make constitutes denial of the defendant's right to counsel. *See id.* at 825; *see also Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980) (en banc) (holding that improper denial of jury argument can constitute denial of right to counsel). A defendant has the legal right to argue any theory supported by the evidence. *Thomas v. State*, 336 S.W.3d 703,

12

713 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.) (citing *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997)).

Denial of the right to counsel is an error of constitutional magnitude. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Lemos*, 130 S.W.3d at 892–93 ("A criminal defendant's constitutional rights to counsel and to a jury trial encompass a right to have his theory of the case argued vigorously to the jury."). Because the error is of constitutional magnitude we must evaluate harm under Rule 44.2(a), which requires us to reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* TEX. R. APP. P. 44.2(a).

Appellant contends that he was deprived the right of counsel when the trial court "[prohibited] the defense from advancing its only theory for acquittal." We have already held that the trial court's ruling sustaining the State's objection was erroneous and concluded that the error was harmless beyond a reasonable doubt as it pertains to appellant's presumption of innocence.

Appellant contends that he was harmed when his defense counsel was forbidden from advancing his only argument. However, the record shows that defense counsel continued his closing argument after the objection on the presumption of innocence. During this time, defense counsel raised

13

inconsistencies in the testimony, attacked the credibility of witnesses, and argued that the State failed to establish appellant's guilt beyond a reasonable doubt. *See id*. Therefore, appellant was not denied his one and only argument.

Furthermore, just moments after the trial court improperly sustained the State's objection, the trial court instructed the jury to be guided by "the law that's in the charge." The written jury charge, which the trial court had previously read aloud, contained a thorough and correct statement of the presumption of innocence and instructed the jury to acquit if it had reasonable doubt after considering all of the evidence presented. Therefore, the trial court submitted the argument to the jury through the jury charge. In the absence of any evidence that the jurors did not do so, we must assume that the jurors, in the course of their deliberations, utilized the law in the jury charge. *See Colburn*, 966 S.W.2d at 520.

We conclude that the trial court did not deprive appellant of the right to counsel by prohibiting him from advancing his only theory for acquittal.

Moreover, to the extent that the trial court erred by sustaining the State's objection to appellant's proper statement regarding the presumption of innocence, the record shows that the error was harmless with respect to appellant's ability to make that argument. As we have already discussed, the purpose of instructing the jury about the presumption of innocence is to tell the jury "to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on

14

the basis of suspicions that may arise from the fact of his arrest, indictment, or custody" and to emphasize the fact that the accused has "the right to be free from criminal conviction unless the State can prove his guilt beyond a reasonable doubt by probative evidence adduced at trial." *See Miles*, 204 S.W.3d at 825. The State never denied its burden to prove appellant's guilt beyond a reasonable doubt, and appellant was allowed to make that argument during his closing statement without objection. As we have previously held upon reviewing the entire record, the evidence against appellant was strong.

Thus, the error resulted from a short exchange which ended with the trial court referring the jury to the accurate statement of law in the jury charge, and neither the trial court nor the State emphasized the error. Given the totality of the circumstances, including the proper and thorough jury charge and the other arguments appellant was permitted to advance during his closing argument, we conclude that the jurors probably did not place much weight on this single error. *See Wesbrook*, 29 S.W.3d at 119 (holding that harmless error analysis should not focus on propriety of outcome of trial, but on probable impact of error on jury in light of existence of other evidence).

Therefore, we hold that any error in the trial court's not allowing appellant to make his argument concerning the presumption of innocence was harmless beyond a reasonable doubt.

We overrule appellant's third and fourth issues.

**Reformation of Judgment**

In his fifth issue, appellant contends that the judgment reflects the incorrect degree of offense. An appellate court has the power to correct and reform a trial court judgment to make the record speak the truth when it has the necessary data and information to do so. *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see* TEX. R. APP. P. 43.2(b) (permitting court of appeals to render judgment modifying trial court judgment and affirming as modified). The degree of felony for assault of a family member depends on evidence shown at trial of a prior conviction of assault against a family member. *See* TEX. PENAL CODE ANN. § 22.01(b–1).

The State admits, and we agree, that the judgment of conviction reflects the wrong degree of offense. The judgment reflects that appellant was convicted of a second-degree felony of assault of a family member by choking. Although the indictment contained a paragraph alleging a previous conviction for assault against a family member, the State abandoned that enhancement and did not present evidence of it at trial. Because appellant's prior family assault conviction was not admitted into evidence, appellant's judgment should reflect the conviction of a third-degree felony. *See id.* § 22.01(b)(2), (b–1). The State presented evidence of appellant's prior felony convictions of burglary and attempted burglary of a

16

habitation.  Appellant was thus sentenced as a habitual offender, so the modification of the judgment has no effect on the punishment assessed.  *See id.* § 12.42(d) (Vernon Supp. 2012).

We sustain appellant's fifth issue.

## Conclusion

We modify the judgment to reflect appellant's conviction of a third-degree offense, and we affirm the judgment as modified.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).