**Opinion issued April 30, 2015**



In The

# Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-14-00185-CR**

———————————

**JAVIA SINQUIZE JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12-CR-1447**

---

**MEMORANDUM OPINION**

Appellant, Javia Sinquize Johnson, was charged by indictment with intentional injury to a child.[1]  Appellant pleaded not guilty.  The jury found her

---

[1]    *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e) (Vernon Supp. 2014).

guilty of the lesser-included offense of criminal negligence injury to a child[2] and assessed punishment at two years' confinement. In two issues, Appellant argues the trial court abused its discretion by allowing the State (1) to impeach a witness with a portion of a prior recorded statement and (2) to question a witness about an alleged prior extraneous offense by Appellant without proper notice.[3]

We affirm.

## Background

Appellant took her daughter, C.N., to the hospital on May 22, 2012, because C.N. was suffering seizures and having difficulty breathing. Doctors determined that C.N. had suffered severe blunt force trauma, causing bleeding inside the brain and other injuries. As a result, police were notified and began an investigation.

As part of the investigation, C. McCarty met with J.J., Appellant's oldest son. McCarty is a forensic interviewer for the Child Advocacy Center for Children of Galveston County. McCarty recorded her interview with J.J., questioning him about what he saw leading up to C.N.'s hospitalization  During the interview, J.J.

---

[2] *See id.* § 22.04(a)(1), (g).

[3] After the parties filed their briefs, this Court requested briefing from the parties on unassigned error. *See Pfeiffer v. State*, 363 S.W.3d 594, 599 & n.16 (Tex. Crim. App. 2012) (holding, unless restricted by statute, courts of appeals in criminal cases have jurisdiction to consider any error in a case and may review unassigned error, though appellate court usually should first allow parties to brief issue). The panel has determined that its request was improvident. Nothing in our order should be construed as a determination of the facts present in or absent from the record, a ruling on any legal issue, or any other substantive assessment on any matter.

2

told McCarty that he saw his mother grab C.N. by the feet, swing her around, and then bang her head on the floor due to C.N.'s refusal to eat her dinner. J.J. demonstrated what he saw his mother do with his hands and with a doll.

The State charged Appellant with intentional injury to a child. Prior to trial, the State provided Appellant with its intent to introduce evidence of extraneous offenses. One of those alleged offenses was for witness tampering with her oldest son, J.J. Specifically, the State alleged that Appellant "[t]old [J.J.] that [Appellant] did not hurt [C.N.] and that [J.J.] should say that [Appellant] did not hurt [C.N.]." The State alleged the offense occurred on or about May 21, 2012.

At trial, the chief prosecutor for the State told the trial court that he had met with J.J. in November 2013. At that meeting, J.J. began recanting the statements he made to McCarty. The prosecutor asked J.J. then if anyone had told him what to say. J.J. responded "that his mother told him to say that she did not hurt [C.N.]."

When J.J. was first asked at trial about his conversation with McCarty, he claimed he did not remember meeting with her or any portion of his conversation with her. The next day, after having an opportunity to review the video of his conversation with her, J.J. testified that he remembered meeting with her and admitted saying most of his statements contained in the recording. J.J. equivocated, however, on whether he had used his hands to demonstrate what his

3

mother did to C.N. and on whether he had used a doll to demonstrate what his mother did to C.N.

The State sought to question J.J. on whether Appellant had told him what to say based on the November 2013 meeting and J.J.'s change of story. It sought to present an excerpt of the video interview with McCarty showing J.J.'s gestures based on J.J.'s equivocating about what he demonstrated to McCarty. The trial court permitted both over Appellant's objections.

## Standard of Review

Both of Appellant's issues concern the admission of evidence. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles—that is, whether the court acted arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991). We must uphold the trial court's ruling so long as it is "within the zone of reasonable disagreement." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

## Witness Impeachment

In her first issue, Appellant argues that the trial court abused its discretion by allowing the State to impeach a witness with a portion of a prior recorded

4

statement. A party may impeach a witness with evidence of a prior inconsistent statement if the party first presents the witness with the existence of the statement, the details and circumstances surrounding the statement, and gives the witness the opportunity to explain or deny the statement. TEX. R. EVID. 613(a), 61 TEX. B.J. 374, 391 (Tex. & Tex. Crim. App. 1998, amended 2015).[4] "If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted." *Id*. "If the admission is partial, qualified, or otherwise equivocal, or if the witness claims to not remember making the prior statement, the prior statement is admissible for impeachment purposes." *Ruth v. State*, 167 S.W.3d 560, 566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing a falsehood." *Aranda v. State*, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987).

When the prosecutor first asked J.J. about his conversation with McCarty, J.J. claimed he did not remember meeting with her or any portion of his

---

[4]   Effective April 1, 2015, the Texas Supreme Court has adopted amendments to the Texas Rules of Evidence. *See* 78 TEX. B.J. 42, 42 (Tex. 2015). The substantive changes to Rule 613 keeps the requirements that a witness be given an opportunity to explain the prior inconsistent statement or circumstances or statement showing bias or interest, but removes these as foundation predicate requirements. *Id.* at 42–43, 65. All other changes are stylistic. *Id.* at 65. All further citations to Rule 613 in this opinion refer to the rule as it existed during the parties' trial.

conversation with her. The next day, after having an opportunity to review the video of his conversation with her, J.J. testified that he remembered meeting with her and admitted saying most of his statements contained in the recording. J.J. equivocated, however, on whether he had used his hands to demonstrate what his mother did to C.N. and on whether he had used a doll to demonstrate what his mother did to C.N. The State sought to introduce the portion of the video when J.J. demonstrated with his hands and the doll to impeach J.J.[5] The trial court allowed that portion of the video to be admitted.

Appellant argues that the video was admitted because J.J. admitted to "the most damning statements" but denied that they were true. This is incorrect. The State never argued that anything should be admitted based on J.J.'s claim that the original statements were false, and the trial court never admitted the video on that ground. Instead, the only portion of the video that was admitted was the part of the conversation about which J.J. had equivocated: whether he had used his hands and a doll to demonstrate what his mother did to C.N. Because J.J. equivocated about

---

[5] Neither Appellant nor the State addresses whether J.J.'s demonstrative gestures constitutes a "statement" for purposes of Rule 613. *See* TEX. R. EVID. 613(a), 61 TEX. B.J. 374, 391 (Tex. & Tex. Crim. App. 1998, amended 2015) (establishing admissibility requirements for prior inconsistent *statement*); *see also* Tex. R. Evid. 801(a), 61 TEX. B.J. at 393 (defining "statement," for purposes of hearsay rules, to include nonverbal conduct of person if conduct is intended as substitute for verbal expression); *Foster v. State*, 779 S.W.2d 845, 862 (Tex. Crim. App. 1989) (distinguishing between types of nonverbal conduct in context of hearsay). Instead, both parties treat J.J.'s gestures as statements. Because both parties treat J.J.'s gestures as statements, we treat them as statements for purposes of this appeal.

6

the gestures he made, Rule 613 permitted the evidence to be admitted to impeach J.J. *See* TEX. R. EVID. 613(a).

Appellant also argues that it was improper for the State to elicit impeachment testimony from J.J. as a pretext for introducing the video as substantive proof of what happened to C.N. Appellant correctly argues that the purpose of Rule 613 is to allow a witness's credibility to be impeached, not to create substantive proof of guilt of the defendant. *See Arrick v. State*, 107 S.W.3d 710, 722 (Tex. App.—Austin 2003, pet. ref'd) ("In the absence of an applicable hearsay exception, a witness's prior inconsistent statement may be used to impeach the witness's credibility but may not be used as primary evidence of guilt."). As a result, it is improper for a party to "call a witness it knows to be hostile for the primary purpose of eliciting otherwise inadmissible impeachment testimony, employing such a device as a subterfuge to avoid the hearsay rule." *Id.*

This argument has been waived, however. Appellant did not request an instruction limiting the jury's consideration of J.J.'s impeachment testimony and the accompanying video. Accordingly, the jury could consider it for substantive purposes, regardless of whether the State established an applicable hearsay exception. *See Arana v. State*, 1 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("Once evidence is admitted without a proper limiting instruction, it becomes part of the general evidence in the case and may be

considered for all purposes."); TEX. R. EVID. 105(a), 61 TEX. B.J. at 375 (providing that evidence that is admissible in limited scope cannot be ground for complaint on appeal if limiting instruction is not requested).

We hold the trial court did not abuse its discretion by permitting the State to impeach J.J. with the portion of the video showing J.J.'s gestures. We overrule Appellant's first issue.

## Prior Extraneous Offense

In her second issue, Appellant argues that the trial court abused its discretion by allowing the State to question a witness about an alleged prior extraneous offense of witness tampering[6] by Appellant without proper notice. The chief prosecutor for the State told the trial court that, when he had met with J.J. in November 2013, J.J. began recanting the statements he made to McCarty. The prosecutor then asked J.J. if anyone had told him what to say. J.J. responded "that his mother told him to say that she did not hurt [C.N.]." The State sought to question J.J. on this before the jury. The State claimed it had provided notice of the extraneous offense. Appellant admitted receiving notice, but claimed it was deficient because it lacked a date for the alleged offense. The State responded that it had provided a date in the notice, though it could not be sure of the exact date of the extraneous offense.

---

[6]     *See* TEX. PENAL CODE ANN. § 36.05(a)(1) (Vernon Supp. 2014).

When requested, the State must provide "reasonable notice" of any extraneous offenses committed by the defendant that the State intends to introduce at trial. TEX. R. EVID. 404(b), 61 TEX. B.J. at 378. Rule 404(b) does not define "reasonable notice."[7] Even assuming that the State was required to provide notice of the date of the alleged offense and that the State's notice was insufficient, Appellant has failed to establish how she was harmed by the error.

When the State asked J.J. whether his mother had told him to testify in a certain way, J.J. responded, "No." An attorney's questions themselves do not constitute evidence. *See Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). J.J.'s response did not indicate that Appellant had committed the offense of witness tampering. *See* TEX. PENAL CODE ANN. § 36.05(a)(1) (Vernon Supp. 2014) (establishing as an offense to coerce witness into falsely testifying). Furthermore, the jury was instructed that it could not consider the testimony "unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed." "[I]n the absence of evidence to the contrary, we will assume that the jury followed its written instructions." *Miles*

---

[7] Section 3(g) of Article 37.07 of the Texas Code of Criminal Procedure requires notice to include a date for the alleged offense. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp. 2014). But this requirement only applies to the punishment phase of trial. *See id.* art. 37.07, § 3(e) ("Nothing herein contained shall be construed as affecting the admissibility of extraneous offenses on the question of guilt or innocence."). The complained-of questioning arose during the guilt-innocence phase of trial.

*v. State*, 204 S.W.3d 822, 827–28 (Tex. Crim. App. 2006). Appellant has not identified any evidence to rebut the presumption that the jury followed its instructions about the extraneous offense. Accordingly, Appellant had failed to show how she was harmed by J.J.'s denial that she had told him to testify in a certain way.

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).