

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1522-11

**JAMES HENRY GELINAS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO  COUNTY

**JOHNSON, J., filed a dissenting opinion.**

### D I S S E N T I N G   O P I N I O N

I find no reason to disavow *Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996).  It correctly followed the dictates of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g), which is still the standard for jury-charge error.  And this case is very close to being on all fours with *Hutch* and should be resolved in the same way.

*Almanza* says that reviewing courts must consider the charge itself, the state of the evidence, including contested evidence, and the weight of the probative evidence, the arguments of counsel,

and any other relevant information revealed by the record of the trial as a whole.  *Almanza* at 171.

The outcome of this trial on a charge of driving while intoxicated rested to a large degree on what the jury believed about the color of the light over appellant's license plate, and that fact issue was greatly contested.  Under a correct statement of the law, if the jury believed that the light was white, it must conclude that the stop was illegal and, as a result, disregard evidence obtained from the stop, that is, all evidence of intoxication.  When a factual dispute arises as to whether the evidence was legally obtained, an instruction on the issue is required.  *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986).

In this case, defense counsel requested a jury instruction on the 38.23 issue.  The prosecution objected to such an instruction, saying,

> Suppression of the evidence–Your, Honor, this issue has already been litigated in a suppression hearing before this trial, which is the proper vehicle for that kind of–that kind of testimony, that kind of evidence.

> A jury instruction on suppression issues at this point would be unnecessary, confusing to the jury.  Questions of–what he's asking for is an instruction on facts, not questions of law, which is what the instructions should have.  And all the facts that were presented before the jury–testimony, evidence, exhibits–so, you know, we do object to that first instruction of suppressing evidence, whether that issue should be considered by the jury.

> IV R.R. 87-88.

The state's objection appears to be that it does not want the finder of facts, the jury, to find facts.

There is no dispute that the application paragraph of the jury charge in this case stated the law as to the issue of the color of the light in a manner directly opposite to the correct law.  So let us look at that error as is dictated by *Almanza*.

Clearly, the charge contained error, an error I consider significant.  An error that converts an

act from legal to illegal is not a typographical error–a mistake, usually involving misspelling or misplaced punctuation, that is recognizable as an error in any context.  The error in this case had the potential to completely alter the deliberations of the jury, not a circumstance to be shrugged off as of no great import.  Nor should it be minimized because it occurred in the application paragraph.

An abstract paragraph does not inform the jury of what facts, if found by it, would permit the jury's consideration of the contested evidence.  In this case, the abstract "paragraph" of the charge was brief, general, and printed, without a break, in the same physical paragraph as the application "paragraph": "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence and against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that a person detained actually is, has been or soon will be engaged in criminal activity."  This occupied ten lines in two paragraphs in the reporter's record, six lines in the same paragraph as the application paragraph in the charge.  The situation is further complicated by the judge's reading of the abstract paragraph to the jury: "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an lawful stop and detention shall be admissible in evidence and against such accused."  VI R.R. 99.

In contrast, the application paragraph set out, in specific detail, what was to be considered in determining whether the stop was proper.  This took 16 lines in the reporter's record, 9 lines in the charge. The application paragraph took a correct, general statement–"no evidence obtained or derived by an officer or other person as a result of an unlawful stop"–and gave specific details about the circumstances in this case that would constitute an illegal stop–"his vehicle failed to [have] a

white light to illuminate the vehicle's license plate . . .." Because the application paragraph is the portion of the charge that authorizes the jury to act,[1] it is not sufficient that the jury received a correct instruction in the abstract paragraph.[2] "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion."[3]

*Almanza* directs us to consider the state of the evidence, including any contested issues, and the weight of the probative evidence. *Almanza* at 171. We are not restricted to considering only contested issues. The most contested issue was the color of the light, but there was also a contest over the second reason that the officer originally gave for the stop–appellant did not signal a turn when he entered a public road from a private parking lot–and the officer conceded that such a failure to signal was not an offense and could not have formed a valid reason to stop appellant. There were other contested issues: why the officer edited the video and what he had removed; what appellant's wife said to appellant and to the officer. There was no breath test.

The arguments of counsel are to be considered also. One out of three arguments reiterated the erroneous instruction, another argument told the jurors to read it for themselves, and the third vouched for the accuracy of the instructions.

The lead prosecutor's argument covers thirteen pages in the reporter's record, and his only reference to the application paragraph covers eleven lines. That portion ends with a partial reading of the charge: "'. . . his vehicle failed to comply with the Texas Transportation Code provision, which requires a white light to illuminate the vehicle's license plate,' and then you can read the rest

---

[1] *Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991).

[2] *Williams v. State,* 547 S.W.2d 18, 20 (Tex. Crim. App. 1977).

[3] *Ibid*.

of it." VI R.R. 114-15. The argument of the second prosecutor covers twelve pages in the reporter's record. In his only mention of the jury charge, which covers two lines, the second prosecutor explicitly vouched for the accuracy of the jury charge: "And these instructions, while they're a little bit convoluted, it says exactly what it should say." VI R.R. 150.

Defense counsel read the entire erroneous portion of the charge. VI R.R. 128. In the middle of defense counsel's closing argument, the lead prosecutor objected that defense counsel was misstating the law. The trial court responded to this objection by saying that "you've been told this throughout the trial–anything the lawyers tell you is not evidence." VI R.R. 126. "[A]rguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978). But those arguments can exacerbate an error by repeating it.

The last *Almanza* concern is any other relevant information revealed by the record of the trial as a whole. *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993) (citing *Almanza*). This record does not appear to have "other relevant information" as to the contested issue of the license-plate light.

After considering all of the *Almanza* factors, I would find that the erroneous instruction cannot be deemed harmless. Jurors are presumed to have understood and followed the court's charge, absent evidence to the contrary. *Miles v. State,* 204 S.W.3d 822, 828 (Tex. Crim. App. 2006) ("[I]n the absence of evidence to the contrary, we will assume that the jury followed its written instructions.").[4] Many, if not most, jurors are not lawyers prepared to parse every statement in a jury

---

[4] *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987), is inapt in this case as it deals with the presumptions in regard to the efficacy of an instruction by the trial court to disregard objectionable testimony. It is not concerned with erroneous jury instructions. "In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury." *Id.*

charge. These jurors heard the trial court read them an incorrect instruction on the contested issue of the validity of the traffic stop: "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an lawful stop and detention shall be admissible in evidence and against such accused." The lead prosecutor read part of the erroneous instruction and told them to read the rest of it for themselves, the defense counsel read the entire erroneous instruction, and the second prosecutor vouched for the accuracy of the erroneous instruction. The jury received a written charge that comported with the oral communications of the trial judge, defense counsel, and both prosecutors. Why would the jury think that the instruction was wrong?

Nor is this a windfall for a defendant. The state is equally responsible for the jury charge's accuracy. It may request instructions that it thinks are appropriate, it may challenge requests from the defense, and may suggest to the trial court that a portion of the charge is in error. Do not the prosecutors, like defense counsel, have a responsibility to object to errors in a jury charge? In this case, the state not only failed to object to the error, it urged the jury to read the erroneous instruction and then vouched for its accuracy: "And these instructions, while they're a little bit convoluted, it says exactly what it should say."

When we consider jury-charge error, we must limit our review to what is in the reporter's record. We should not purport to divine how the jurors might have interpreted the erroneous instruction; we may consider only what is in the reporter's record. I am unpersuaded and made somewhat suspicious by the repeated use of words such as "likely," "most likely," "unlikely," "probable," "almost certainly," "obviously," "obviousness," "may well," and "merely." "Common sense" is not common, and I fear that many prosecutors have stories about juries that seemed devoid of that quality.

I find it very odd indeed that it has been asserted that the bigger the error, the smaller the chance that the error is harmful: "In light of the obviousness of those errors, the common sense of the jurors, the correct portion of the jury charge, and the correct statements of law in both parties' closing arguments, we believe it probable that the jury resolved the issue in accordance with the law." That is, if the error is "obvious," surely the jury will know that and use the correct law. But the error may be "obvious" only to a lawyer. In the unfamiliar context of a trial, the jurors may be lacking in common sense. And how is the jury to know what the correct law is when the trial judge and all three lawyers in the case told them the same incorrect law? In this case, neither the trial court nor the state corrected the error. Defense counsel seems to have attempted to do so after reading the erroneous jury instruction, but his explanation provoked an objection by the second prosecutor, an objection that indicates that the lead prosecutor had conflated the standard for a valid stop–specific articulable facts–with the standard for a finding by the jury–reasonable doubt.[5]

> [Defense] What is the Court telling you? If you–if you find that he had a white license plate or even if you–all you had was a reasonable doubt whether he had a license plate, then the stop was illegal. You know, you can't even have a reasonable doubt, you absolutely know for a fact–
>
> [State] Your Honor, I object. He's misstating the law. That's not what the instruction says. It's not beyond a reasonable, it's specific articulable facts.
>
> [Defense] I'm telling that if it's beyond reason that it was a white light, but the law says that all you have to have is a reasonable doubt of whether it was or was not.
>
> [State] Your Honor, that's not your instruction.
>
> [The court] All right. "Ladies and gentlemen, just refer to the instructions of the Court." VI R.R. 128-29.

---

[5] The instruction correctly stated the standard: "If you find from the evidence that . . . [appellant] . . . failed to comply . . . or you have a reasonable doubt thereof . . . ."

Also odd is an assertion that the error benefits the defendant because the application paragraph told the jury what to do with legally obtained evidence, but did not tell it what to do with illegally obtained evidence. Suppose that one tells a six-year-old child, "I have two ice-cream cones, one is chocolate, the other is vanilla. Would you like to have the vanilla cone?" Even a child of that age knows that there are still two choices: "Yes, I would like the vanilla cone," and "No, I prefer the chocolate cone." Just because the second choice is not specifically articulated does not mean that the choice is not known.

The abstract portion says, "You are instructed that under our law, no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence and against such accused." This is a correct, general statement of the law. The jury's first ice-cream cone is to find that evidence was obtained in violation of the law and that it must not consider it. The jury's second ice-cream cone is to find that the evidence was not obtained in violation of the law and that it may therefore be considered. Like the six-year-old and the ice-cream cones, the presumably rational adults on the jury knew that there were two choices as to the contested evidence about the color of the license-plate light. Any rational adult knows that not all choices must be articulated in order to be known. Even though, in this case, the abstract and application paragraphs conflict, it seems to me that non-lawyer jurors, when told to obey the instructions given by the trial judge in the written charge, will depend more on the application paragraph than on the abstract paragraph because it sets out the issue to be determined in concrete, non-legalese language. That language constituted a substantial error.

Because the error in the charge was articulated at least four times, without correction, I would find that the error resulted in egregious harm and affirm the judgment of the court of appeals.

I respectfully dissent.

Filed:  May 15, 2013
Publish