## In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-21-00394-CR
_____

## WALTER HENRY PATERSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-06-08377-CR**

## MEMORANDUM OPINION

Walter Henry Paterson appeals from a judgment in which he was convicted of assaulting *Joan*, a member of his family, by intentionally, knowingly, or recklessly impeding her normal breathing or the circulation of her blood by applying pressure to her throat or neck or by

blocking her nose or mouth.[1] In the punishment phase of the trial, the jury found Paterson guilty, answered "True" to the enhancement counts in Paterson's indictment, and decided that Paterson should serve a forty-year sentence.[2] The trial court accepted the jury's verdict, pronounced sentence, and signed a judgment consistent with the verdict.

Paterson raises three issues in his appeal. Paterson's first two issues claim the trial court erred in admitting evidence in the guilt-innocence phase of his trial. In Paterson's first issue, he argues the trial court abused its discretion when it excluded evidence that he argues would have shown why Joan chose to testify against him and testified for the State. According to Paterson, the evidence the trial court excluded "related to [Joan's] motive" to testify against him and for the State.

---

[1]*See* Tex. Penal Code Ann. § 22.01(b)(2)(B). To protect the victim's privacy, we have used pseudonyms for the victim's name and the names of some of the witnesses. *See* Tex. Const. art. I, § 30 (granting a crime victim "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2]Tex. Penal Code Ann. § 12.42(d) (allowing the factfinder to consider sentencing the defendant to "any term of not more than 99 years or less than 25 years" should the factfinder determine the defendant is guilty of committing a felony other than a state jail felony and find the defendant incurred two or more prior sequenced felony convictions before committing the offense at issue in his trial, the primary offense).

In Paterson's second issue, he argues the trial court abused its discretion by allowing one of the State's witnesses, a witness with a Ph.D. in counseling, to remain in the courtroom when Joan testified during the trial. According to Paterson, the trial court allowed Dr. David Lawson, a professor who testified he teaches classes in psychology at Sam Houston State University, to remain in the courtroom over his objection after he invoked "The Rule" that requires witnesses in the case to be excluded from the courtroom.[3]

In Paterson's third issue, he contends the trial court erred in allowing the jury through the court's charge to consider convicting him of assault by finding that he blocked Joan's nose or mouth. According to Paterson, no evidence supported the instruction in the charge that allowed the jury to convict him on a theory that he blocked Joan's nose or mouth as a manner or means of committing the assault.

---

[3]*See* Tex. R. Evid. 614 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.").

We conclude that Paterson's issues, for the reasons explained below, were either unpreserved or lack merit. We affirm the trial court's judgment.

## Background

Since Paterson didn't argue the evidence admitted in his trial was insufficient to support his conviction, we limit our discussion of the background in Paterson's case to the information needed to explain why the Court is overruling the issues Paterson has raised in his appeal.[4]

The testimony in the trial shows that Joan and Paterson were married when the alleged assault involving Joan occurred. On June 17, 2021, police arrested Paterson based on the allegations in an Information, which alleges that on or about April 9, 2021, he assaulted Joan a member of his family by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of her blood by applying pressure to her throat or neck or by blocking her nose or mouth.[5] In this opinion, we will refer to the offense as assault-family violence, by

---

[4]*Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).
[5]*See* Tex. Penal Code Ann. § 22.01(b)(2)(B).

4

strangulation.[6] On the day that Paterson was arrested, Joan sued Paterson for divorce.

In August 2021, a Montgomery County grand jury indicted Paterson for assault-family violence, by strangulation.[7] Paterson's indictment contains two enhancement counts, each of which alleges that Paterson had been convicted of committing another felony that became final before he assaulted Joan.[8]

Paterson's trial began on December 7, 2021. Six witnesses were called by the State to testify over the two days of the guilt-innocence phase of Paterson's trial: (1) Joan, (2) *Cade*, Joan's fourteen-year-old son; (3) *Tori*, Joan's friend; (4) Jessie Minchew, a detective with the Conroe Police Department; (5) Brookley Torres, a forensic nurse examiner; and

---

[6] *Id.*

[7] *Id.*

[8] The assault-family violence by strangulation part of Paterson's indictment alleges that Paterson "knowingly or recklessly cause[d] bodily injury to [Joan], a member of the defendant's family or a member of the defendant's household or a person with whom the defendant has or has had a dating relationship, as described by Section 71.003 or 71.005 or 71.0021(b), Family Code, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of [Joan] by applying pressure to [Joan's] throat or neck or by blocking [Joan's] nose or mouth[.]" *See id.*

5

(6) David Lawson, a university professor who holds a doctorate in counseling.

Only two witnesses testified on the first day of the trial: Detective Minchew and Brookley Torres. Before Detective Minchew testified, Paterson's attorney asked the trial court to "invoke the rule[,]" which the trial court understood as a request to exclude the witnesses from the courtroom except for those subject to exceptions in Rule of Evidence 614.[9] After Paterson's attorney asked the trial court to invoke the rule, the judge asked, "were there any other potential witnesses [in addition to the first witness who was called to the stand] in the courtroom at this time?" The prosecutor told the judge: "No, Judge, not from us." The judge instructed one of the defendant's potential witnesses (who ultimately didn't testify in the guilt-innocence phase of the trial) to "step outside in the hall[.]"

---

[9]Tex. R. Evid. 614 (listing four exceptions to Rule 614: (a) a party; (b) a party's designated representative; (c) "a person whose presence a party shows to be essential to presenting a party's claim or defense;" and (d) "the victim in a criminal case, unless the court determines the victim's testimony would be materially affected by hearing other testimony at the trial").

On appeal, Paterson doesn't claim that Dr. Lawson was in the courtroom on the first day of Paterson's trial. Instead, he claims Dr. Lawson entered the courtroom and heard the testimony of Joan and Cade on December 8, the second day of the trial even though the trial court, on December 7th, had instructed the witnesses in the courtroom to wait outside in the hall.

On the second day of the trial, Joan told the jury about the argument that she had with Paterson on April 9th that, by her account, was the trigger that led to Paterson's assault. Joan explained that on April 9th, she confronted Paterson about the way he was disciplining Cade. By Joan's account, an argument ensued, Paterson pushed her into their bedroom, locked the door, and "put his hand on [her] throat" with "his thumb [ ] right on [her] vocal cord[.]" Joan testified that Paterson used his hand and put pressure on her neck. When the prosecutor asked Joan whether she had trouble breathing, Joan answered: "Yes." Joan said that at one point while she and Paterson were arguing, Paterson had her on the floor with his left hand around her neck. When the prosecutor asked Joan how long she couldn't breathe as Paterson was choking her

7

with his hand, Joan answered: "Not long, probably just a few seconds. I don't know."

On April 10, Joan reported the altercation that occurred the day before to the Conroe Police Department. On April 14th, Joan met with Detective Jessie Minchew. During Joan's interview with Detective Minchew, police photographed Joan's injuries and obtained an audio recording of the altercation on April 9th, which Joan had captured on her cell phone.[10] The photographs and the recording were admitted into evidence in Paterson's trial.

When the prosecutor asked Joan if there was a point where Paterson had his hand over her mouth, Joan answered: "Possibly. I don't remember everything." Joan went on to explain that the events had happened fast. Later, Joan testified that she didn't think Paterson used his left hand to cover her nose or mouth and that while she didn't

---

[10]The recording of the altercation between Joan and Paterson is a video recording. However, because the camera on Joan's cell phone was facing the ceiling, we refer to the exhibit as an audio recording since the audible part of the recording is the only part of the recording relevant to our resolution of the issues in Paterson's appeal.

remember for sure, she also didn't think that he had used his right hand to cover her nose or mouth.

At trial, Joan testified that during the altercation, she told Paterson that he was choking her. Joan testified that when Paterson denied that he was choking her, he then said to her that if she "wanted to see what choking looked like, he'd show me." Then, the prosecutor asked Joan: "Then what did he do?" Joan answered: "He proceeded to choke me." The jury also heard the audio recording from Joan's cell phone. In it, you can hear some muffled breathing, some screams, and periods where no screams are heard. The audio recording corroborates Joan's account that she told Paterson he was choking her, that he denied it, and that he said if she wanted to see what choking looked like, he would show her.

Joan testified that her altercation on April 9th with Paterson wasn't the first time that she and Paterson had been in arguments in which she had been injured. Joan said two reasons explained why she decided not to report those incidents. First, Joan said that after those incidents occurred, she thought that were they to occur only every year or two, she could take it "for our family." Second, Joan said she chose not

9

to report the incidents to the police because she "didn't want him to get in trouble."

When Dr. Lawson testified, he told the jury that he has a license as a professional counselor and a Ph.D. in counseling, which he obtained from the University of North Texas. Dr. Lawson said he is working as a professor in the Department of Counseling at Sam Houston State University, where he directs the University's Center for Research and Clinical Training In Trauma. Dr. Lawson explained that he also teaches courses at Sam Houston State on domestic violence, and that along with teaching, he testifies in court cases that involve claims of domestic violence. Dr. Lawson also told the jury that he has a "private practice basically working with people with trauma backgrounds."

It appears the purpose for calling Dr. Lawson was to present testimony that explained that it's not uncommon for victims of domestic violence not to leave those who injure them, for victims of domestic violence not to report incidents of domestic violence to police, and for victims of domestic violence not to always have accurate memories about what occurred. According to Dr. Lawson, the victim of an incident of

domestic violence usually doesn't report the first incident, and "it usually takes several times before it gets reported." He also testified that victims of traumatic events often block the events from their minds, so it didn't surprise him "at all" that Joan testified that she didn't remember some of the things that had occurred.

After the State rested in the guilt-innocence phase of the trial, Paterson rested too. During the conference on the charge, Paterson objected to the proposed jury charge because it allowed the jury to consider whether Paterson committed the offense by blocking Joan's nose or mouth. Paterson argues the evidence admitted in Paterson's trial doesn't support a finding that he committed the primary offense, assault-family violence, by strangulation, based on the allegation that he impeded Joan's breathing or circulation by blocking her nose or mouth. The trial court, however, overruled his objection and concluded that because the audio recording raised "a scintilla of evidence to support the possibility that that's what was going on during that episode[,]" the trial court had to "leave that in the [] charge."

In closing argument, Paterson's attorney argued Paterson was innocent, and his attorney suggested that Joan had "created this as a mechanism to gain custody of her children." The jury found Paterson guilty of "Assault Against a Family Member by Impeding Breath or Blood Circulation, as charged in the Indictment." In the punishment phase of Paterson's trial, the jury answered "True" to the two enhancement counts in the indictment. Based on its finding of guilt and a punishment range of 25-99 years' imprisonment, the jury decided that Paterson should be confined in the Institutional Division of the Texas Department of Criminal Justice for 40 years.[11] After the jury returned with its punishment verdict, the trial court signed a judgment consistent with the verdict. Paterson subsequently filed an appeal.

Analysis

I. Did the trial court err by excluding Joan's testimony that, according to Paterson, was relevant to Joan's motive for providing "false statements . . . as a witness for the State[?]"

---

[11]*See* Tex. Penal Code Ann. § 12.42(d) (enhancing punishment for defendant who has previously been convicted of two felony offenses to life in prison, or for any term of not more than 99 years or less than 25 years).

12

On appeal, Paterson argues there are two reasons the trial court erred in excluding Joan's testimony about an investigation conducted by the Department of Family and Protective Services five or six years before he was charged with assaulting Joan. The CPS investigation concerned allegations of child abuse and involved the couple's children, but it did not involve allegations of abuse of the children by Joan or Paterson. Instead, the CPS investigation addressed allegations of abuse of the children by a man who was then living with Joan's mother.

First, Paterson argues the trial court's ruling that prevented him from questioning Joan about the CPS investigation kept him from presenting the jury with a complete defense, a defense he claims would have explained why Joan willingly assisted the State in having him prosecuted for assault-family violence, by strangulation. Second, he argues the evidence was both relevant to Joan's credibility and more probative than prejudicial.

When Paterson's attorney presented his bill to show the trial court what he would prove if allowed to question witnesses about the CPS investigation, he didn't ask the trial court to mark any reports from the

five or six-year-old CPS investigation as evidence. Thus, no CPS reports or records of the years-old CPS investigation are included in the appellate record. The sole evidence in the appellate record addressing the CPS investigation consists of Joan's testimony in Paterson's bill of review. Paterson's bill is less than 2 1/2 pages long. In the bill, Joan agreed that five or six years ago, CPS investigated reports about her children being abused. According to Joan, the abuse that CPS investigated occurred when her children were in her mother's home, the abuse occurred about seven years ago, and when she and Paterson found out about the abuse, which was about "five or six years ago," they reported it to CPS.

Based on Joan's testimony, we conclude nothing in it raises a reasonable inference that when the abuse occurred, Joan or Paterson knew their children were being abused. Joan also denied that she left the children at her mother's home "in a situation where they could be abused[,]" and nothing in the record shows her sworn testimony isn't true. Joan acknowledged that after she and Paterson learned of the alleged abuse, there were occasions during their marriage when the allegations about the fact their children had been abused caused friction

14

in their marriage. But when asked, Joan denied that Paterson had ever threatened to bring up the allegations about the abuse should the two of them divorce. Moreover, before Paterson made his bill of review, the evidence already before the trial court shows that Joan sued Paterson for divorce on June 16, 2021—more than a month after police formally interviewed her about the assault of April 9th, an assault Joan reported to police on April 10th. Paterson's attorney never questioned Joan about whether she was contemplating a divorce in the weeks or months before the assault in April 2021 occurred.

So, we turn first to Paterson's argument that excluding Joan's testimony about the CPS investigation violated his constitutional right to present a meaningful defense.[12] At trial, however, Paterson's attorney told the trial court that he wanted to offer the evidence to show that Joan "left the kids unattended with a - - and they were molested[,]" not for the

---

[12] *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (explaining that the federal constitution "guarantees criminal defendants a meaningful opportunity to present a complete defense"); *U.S. v. Nixon*, 418 U.S. 683, 711 (1974) (explaining that a criminal defendant's right to present evidence "has constitutional dimensions," drawing from the Sixth Amendment rights to confrontation and compulsory process).

"truth of the matter asserted[.]" After the trial court heard the CPS investigation occurred years before April 9, 2021, and didn't involve a claim that either of the parents abused the children, the trial court said: "I don't see what the relevance of that would be." In response, Paterson's attorney argued evidence about the CPS investigation was relevant to showing why Joan had a motive to lie about "what occurred" so that she could maintain custody of their children. That said, Paterson's attorney never told the trial court that a ruling that prevented him from examining Joan about the CPS investigation into claims of abuse that allegedly occurred at Joan's mother's home years before Paterson was charged with assault would prevent Paterson from presenting the jury with a meaningful defense.

To preserve claims of error under Texas law, a party must generally bring the claim to the trial court's attention to avoid forfeiting the right to complain about the alleged error on appeal.[13] Almost every right—whether constitutional or statutory—is waivable when the party fails to object or request relief in the trial court before a complaint about the

---

[13]*See* Tex. R. App. P. 33.1.

16

matter may be considered on appeal.[14] Moreover, the issue the appellant raises in an appeal "must comport with the objection made at trial."[15] Consequently, "[a]n objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal."[16]

Here, Paterson attempts to rely on a legal theory that differs from the one he relied on at trial. At trial, Paterson's attorney never argued that a ruling excluding Joan's testimony about the CPS investigation would prevent Paterson from presenting a meaningful defense. The right that Paterson claims he lost—the right to present a complete defense— is forfeitable if not preserved.[17]

We conclude the argument Paterson presents for the first time on appeal—that he had a constitutional right to present a complete defense by examining Joan about the CPS investigation—doesn't comport with the objection that he raised in his trial: that Joan's testimony about the

---

[14]*Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986).
[15]*Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).
[16]*Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990)).
[17]*Anderson v. State*, 301 S.W.3d 276, 277 (Tex. Crim. App. 2009).

CPS investigation was relevant and more probative than prejudicial to the reason Joan was testifying against him in the trial.[18]

Next, also as part of the argument Paterson presents in his first issue, he claims the trial court erred when it found that Joan's testimony about the CPS investigation was not relevant to his defense. We review a ruling excluding evidence for abuse of discretion.[19] An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles."[20] We will reverse a trial court's ruling excluding testimony only if the record shows the ruling "falls outside the zone of reasonable disagreement."[21]

Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."[22] Relevant evidence must be

[18]*See id.*
[19]*Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016).
[20]*State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (cleaned up).
[21]*Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).
[22]Tex. R. Evid. 401.

both material and probative.[23] Relevant evidence need not, by itself, prove or disprove a particular fact if it provides at least a "small nudge" toward proving or disproving a material fact.[24] When determining relevance, courts examine what the party claiming the evidence was relevant told the trial court the purpose of the evidence would be if the court allowed the evidence to be introduced in the trial.[25] In deciding whether to admit evidence, a trial court must consider the purpose of the evidence a party wants before the jury because "[i]t is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved."[26]

In our record, the only evidence addressing the substance of the years-old CPS investigation is Paterson's bill of review. But after examining Joan's testimony in the bill, we can't say the trial court abused its discretion by concluding that Paterson never established a direct logical connection between the CPS investigation (the actual evidence

---

[23]*Henley v. State*, 493 S.W.3d at 83.
[24]*Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).
[25]*Reyna v. State*, 168 S.W.3d 173, 177-79 (Tex. Crim. App. 2005).
[26]*Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009).

Paterson sought to have the trial court admit) and Joan's motives for testifying for the State, which is the proposition that he argues he had a right to prove. First, the evidence before the trial court shows that no divorce proceeding had been filed as of April 10th, 2021, the day Joan reported the assault to the police. Second, in the hearing the trial court conducted on Paterson's bill of review, Paterson's attorney never identified whether any disputed custody issues existed in Joan's and Paterson's divorce (1) on April 10, 2021, when Joan reported the assault; (2) on April 14, 2021, when Joan met with and was interviewed by Detective Minchew; (3) on June 16, 2021, when Joan filed for divorce; or (4) on December 8, 2021, when Joan testified in Paterson's trial.[27] Third, none of the evidence presented in the bill of review hearing shows that either Joan or Paterson relied on a claim of fault in the proceedings in their divorce or that there were disputes related the custody of their children.

---

[27]For example, neither Joan's petition for divorce nor Paterson's answer (if he filed one) are among the exhibits in the appellate record.

We conclude the trial court didn't abuse its discretion in finding no logical connection existed between Joan's testimony about the CPS investigation and Paterson's theory that the evidence was relevant to Joan's credibility or her motive in testifying or assisting the State in his prosecution.[28] We overrule Paterson's first issue.

## II. Did the trial court err by allowing Dr. Lawson to stay in the courtroom while two other witnesses, Joan and Cade, testified?

Rule 614 of the Texas Rules of Evidence provides:

At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

(a) a party who is a natural person and, in civil cases, that person's spouse;

(b) after being designated as the party's representative by its attorney:

    (1) in a civil case, an officer or employee of a party that is not a natural person; or

    (2) in a criminal case, a defendant that is not a natural person;

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or

---

[28] *Id.*

21

(d) the victim in a criminal case, unless the court determines that the victim's testimony would be materially affected by hearing other testimony at the trial.

In his second issue, Paterson argues the judgment should be reversed because the trial court violated Rule 614 when it allowed Dr. Lawson to remain in the courtroom when Joan and Cade testified. When the trial began, the trial court placed all the witnesses under the "Rule," excluding the witnesses who were in the courtroom that day from the courtroom so they couldn't hear each other's testimony.

On the second day of the trial, the record doesn't show that anyone asked the trial court to invoke the rule or to ask if any witnesses were in the courtroom that day. Joan was the first witness the State called to the stand that day. At some point, although it isn't clear from the record, Dr. Lawson entered the courtroom. In any event, no one notified the trial court that Dr. Lawson was there until shortly after the court took a recess. At that point, the prosecutor said that she wanted to "bring it to the Court's attention that Dr. Lawson, our expert, is in the courtroom. We ask if he could be exempt from the rule." When the trial court asked what "kind of expert," the prosecutor answered, "[d]omestic violence."

"He's a professor at Sam Houston." Even though Paterson's attorney objected "on state and federal constitution[al] grounds," the trial court overruled the objection and granted the State's request.

Although Paterson's attorney objected, he didn't identify any specific constitutional provisions on which he relied. When Paterson's attorney was objecting, the trial court interrupted and declared "[y]our objection is overruled." No clarification of the basis for the objection was offered.

The purpose of Rule 614—referred to by attorneys as "the Rule"— is to prevent the testimony of one witness from influencing the testimony of others who may testify in a trial.[29] Once Rule 614 is invoked, the judge typically instructs the witnesses in the courtroom that they cannot discuss their testimony without the trial court's permission.[30] The trial judge then usually makes the witnesses who are not subject to an exception in Rule 614 leave the courtroom. Sometimes the judge presiding over the case warns the attorneys to advise the trial court if

---

[29]*Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005).
[30]*See* Tex. Code Crim. Proc. Ann. art. 36.06.

any witnesses enter the courtroom after the court has invoked the Rule. But in this case the trial court never instructed the attorneys to tell the court that a witness had entered the courtroom after the Rule was invoked.

After the trial court overruled Paterson's objections "state and federal constitutional objections," Paterson's attorney didn't tell the trial court that he was also objecting to Dr. Lawson remaining in the courtroom based on an argument that none of the exceptions in Rule 614 applied to him. Had that occurred, the prosecutor would have had the opportunity to explain why, from the State's perspective, allowing Dr. Lawson to remain in the courtroom was permissible under one or more of the exceptions in Rule 614.

To sum it up, the complaint Paterson raises in his appeal—that by allowing Dr. Lawson to remain in the courtroom the trial court violated Rule 614—doesn't comport with the objections Paterson made during the trial, objections that he based "on state and federal constitutional grounds." We conclude Paterson failed to make the trial court aware that he wanted the trial court to decide whether one of the exceptions in Rule

24

614 allowed Dr. Lawson to remain in the courtroom while the other witnesses testified in Paterson's case.[31] Because the error wasn't properly preserved, Paterson's second issue is overruled.[32]

## III. Did the trial court err by submitting a charge that allowed the jury to consider whether Paterson blocked Joan's nose or mouth as a manner or means of committing the assault, and if so, was the error harmful?

In Paterson's third issue, he argues the trial court allowed the jury to consider whether he committed the assault by blocking Joan's nose or mouth when that theory was "wholly unsupported by the evidence" presented to the jury in his trial. We use a two-step process to review a claim of charge error.[33] First, we determine whether an error occurred.[34] If an error occurred and if it was properly preserved by and made a proper and timely objection, the error will result in a reversal if the record on appeal shows the defendant suffered "some harm."[35]

---

[31]*See Heidelberg v. State*, 144 S.W.3d 535, 542-43 (Tex. Crim. App. 2004) (concluding the defendant failed to preserve error by objecting on one ground in his trial but then arguing a different legal basis to support his claim addressing the disputed evidentiary matter in the appeal); Tex. R. App. P. 33.1.

[32]*Id.*

[33]*Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).

[34]*Id.*

[35]*Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020).

Generally, the instructions the trial court includes in the charge must conform to allegations in the defendant's indictment.[36] And because by statute the charge must set forth "the law applicable to the case[,]" the Court of Criminal Appeals has held that "[a] trial court is required to fully instruct the jury on the law applicable to the case and to apply that law to the facts presented."[37] Therefore, when an indictment permits a defendant's conviction under four alternative theories, the State may obtain a conviction "if any of the alternatives were proven."[38] But when the evidence in the trial doesn't support some of those alternatives, the trial court's instructions should be reduced to "the specified manner and means" that were supported by the evidence in the trial.[39]

In Paterson's trial, the charge the trial court submitted to the jury tracks the indictment. It allowed the jury to consider four alternative theories as to Paterson's guilt: whether Paterson impeded Joan's normal breathing or circulation of her blood by (1) applying pressure to her

---

[36]*Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012).
[37]*Gray v. State,* 152 S.W.3d 125, 127 (Tex. Crim. App. 2004) (cleaned up); Tex. Code Crim. Proc. Ann. art. 36.14.
[38]*Sanchez*, 376 S.W.3d at 774.
[39]*Id.*

throat, (2) to her neck, or if he impeded her normal breathing or circulation by (3) blocking her nose or (4) her mouth. In the charge conference, Paterson's attorney argued the evidence didn't support the indictment's allegations that Paterson committed the assault "by blocking [Joan's] nose or mouth," and Paterson's attorney asked the trial court to remove these two alternative theories from the charge.

The prosecutor opposed Paterson's request. She argued the evidence admitted in the trial—the audiotape in which you can hear "muffled breathing" and Joan screaming and her screaming stop— supported submitting all four theories, that is the theories that included the theories that Paterson committed the assault by blocking Joan's nose or mouth. According to the prosecutor, despite Joan's testimony that she couldn't remember whether Paterson had covered her nose or mouth, the jury could have reasonably concluded that Joan's nose and mouth had been covered based on the sounds in the audio recording, specifically the sounds of her muffled breathing after she started screaming.

To explain Joan's testimony that she couldn't recall whether her nose or mouth were blocked, and that she didn't think so, the State points

27

this Court to Dr. Lawson's general testimony about victims of domestic violence blocking out their memories of abuse. The State also points to the audio recording, captured on Joan's cellphone, in which you can hear Joan's muffled breathing and Joan screaming intermittently during the assault.

In deciding whether to submit an alternative theory of guilt, the trial court's job is to determine whether the evidence is sufficient to instruct the jury on the alternative theory.[40] That said, a jury may not "draw conclusions based on speculation because doing so is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."[41]

When deciding whether the evidence supports submitting one or more alternative theories of guilt, the trial court must rely on its own judgment, formed in the light of its "common sense and experience to determine whether the evidence and rational inferences that can be

---

[40]Tex. Code Crim. Proc. Ann. art. 36.14.
[41]*Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

drawn therefrom justify the submission[.]"[42] In the charge conference, the prosecutor argued that one of the ways the jury could find Paterson guilty would be to infer from the recording that Joan's nose and mouth were blocked. According to the prosecutor, the sounds in the recording show that Paterson used something to cover Joan's mouth to interrupt her screams. The trial court accepted that argument, overruled Paterson's objection, and instructed the jury to consider the alternative theories of whether Paterson impeded Joan's normal breathing or circulation by blocking Joan's nose or mouth.[43]

On appeal, the State argues that the evidence supported the trial court's ruling to include all the theories of guilt alleged in the indictment. According to the State, the audio recording of the assault shows "the jury heard the sound of [Joan] screaming, followed by muffled breathing and the sound of something covering her mouth."

---

[42]*Chavez v. State,* 666 S.W.3d 772, 778 (Tex. Crim. App. 2023) (cleaned up).

[43]*Roy v. State,* 509 S.W.3d 315, 317 (Tex. Crim. App. 2017) ("An instruction is required if more than a scintilla of evidence establishes [the alternative means of committing] the charged offense.").

We agree that the recording captured Joan screaming. We also agree that when considered in the light most favorable to the evidence the recording captured sounds of Joan's muffled breathing. Yet we disagree the recording captured sounds from which a rational jury could conclude by a standard of *beyond reasonable doubt* that the muffled breathing based on Joan's screams resulted from Paterson's blocking Joan's nose or mouth. Paterson's choking Joan, which is what Joan testified he did to her, fully accounts for those sounds when coupled with Joan's testimony that she didn't recall Paterson blocking her nose or mouth during the assault.[44]

On appeal, the State never explains why Joan's testimony that she was choked by the neck doesn't explain everything heard in the recording that Joan captured on her phone. Based on our review of the record, the record does no more than raise a suspicion that Joan's nose or mouth might have been covered during the assault, and a suspicion of guilt is legally insufficient to support a conviction for assault by strangulation

---

[44] *Hooper,* 214 S.W.3d at 16.

beyond a reasonable doubt.[45] On this record, we conclude the trial court erred in overruling Paterson's objection to the charge.

Since Paterson objected to including the nose and mouth alternatives in the charge, we must review the record to determine whether the trial court's error caused Paterson "some harm."[46] "'Some harm' means actual harm and not merely a theoretical complaint."[47] We will reverse if "the error was calculated to injure the rights of the defendant."[48] "To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information."[49]

When a charge alleges alternative theories of guilt, harm must be measured "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of [guilt] not

---

[45]*See Winfrey v. State*, 323 S.W.3d 875, 883-84 (explaining that evidence that merely raises suspicion of guilt "is legally insufficient to support a conviction").

[46]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc).

[47]*Jordan v. State*, 593 S.W.3d 340, 347 (Tex. Crim. App. 2020).

[48]*Id.*

[49]*Id.*

affected by erroneous portions of the charge."[50] In Paterson's case, the

jury found Paterson guilty "as charged by the Indictment." So, the jury's

general verdict in Paterson's case must stand if the evidence in his trial

is sufficient to support one of the alternative theories of guilt submitted

in the charge. In this case, one of the alternative theories supported by

the evidence is that Paterson impeded Joan's normal breathing or

circulation of her blood by applying pressure to her throat or neck.[51]

Here, the trial court's instructions in the trial court's charge about

the presumption of innocence aren't affected by the erroneous portion of

the charge. In the charge, the trial court advised the jury that,

> the law does not require a defendant to prove his innocence or
> produce any evidence at all. The presumption of innocence
> alone is sufficient to acquit the Defendant, unless the jurors
> are satisfied beyond a reasonable doubt of the defendant's
> guilt after careful and impartial consideration of all the
> evidence in the case.

The charge also instructed the jury that if it had "a reasonable doubt as

to the defendant's guilt after considering all the evidence before you, and

these instructions, you will acquit him and say by your verdict "Not

---

[50] *Sanchez*, 376 S.W.3d at 775.
[51] *See id*.

Guilty." On appeal, a reviewing court presumes that the jurors followed the trial court's instructions when they deliberated on a verdict.[52] Consequently, we must presume that if the jurors discussed the claim in the indictment that Paterson impeded Joan's breathing or circulation by blocking her nose or mouth, the jury rejected those theories based on Joan's testimony that she did not think Paterson covered her nose or mouth during the assault or that she did not remember him doing so.

Second, we consider the arguments the parties relied on when they presented their closing arguments. But even before the attorneys made their closing arguments, the trial court instructed the jury that the "arguments of counsel are not evidence. They are their interpretation of how the evidence in the trial went." In closing argument, the prosecutor told the jury that she could "count four times that [Joan] told you that this defendant put his hands around her neck and applied pressure." According to the prosecutor, the evidence showed that "two of those times [Joan] said she couldn't breathe at all." To be fair (and even though

<hr>

[52]*See Miles v. State,* 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) (absent evidence to the contrary, the usual presumption is that the jury followed the trial court's written instructions).

Paterson doesn't mention it in his brief), we note that the prosecutor told the jury to listen to the audio recording when deliberating on its verdict and to listen to Joan's screams and the sounds of her muffled voice when deciding whether Paterson blocked Joan's nose or mouth. After telling the jury to listen to the recording, the prosecutor told the jury that "there's some inconsistent testimony as it relates to that."

In other words, the prosecutor told the jury to listen to the recording to decide whether from only the sounds on the recording from Joan's phone the jury could find that Paterson, beyond reasonable doubt, had blocked Joan's nose or mouth. The prosecutor also argued that "it doesn't matter which way that you believe, which way you believe he impeded her breath[ing], whether it's covering her nose or mouth or whether it's applying pressure to her neck. He did it at least four times." Yet the four times the prosecutor mentioned Paterson "did it" referred to her earlier argument in which she discussed Joan's testimony that Paterson had choked Joan four times "to the point her windpipe [was] cut off."

Despite the fact the prosecutor discussed the audio recording and tried to tie it to the State's nose-and-mouth theory more than once, we

34

doubt the jury would have found the argument persuasive. In closing argument, the prosecutor conceded that the evidence about whether Paterson had blocked Joan's nose or mouth was "inconsistent." Our conclusion that the jury wouldn't have been persuaded by the prosecutor's attempt to tie the State's nose-or-mouth theory to the recording is reinforced by the fact that the instructions in the charge required the State to prove Paterson's guilt beyond a reasonable doubt. And when Paterson's attorney presented Paterson's closing argument, we note that he didn't take any of his time to respond to the State's nose-and-mouth theory of guilt. Instead, Paterson's attorney argued that Joan was lying about the altercation and made an audio recording of the incident rather than a video so that she could "concoct a recording[.]"

Third, the State's evidentiary case against Paterson was strong. In the audio recording of the altercation, Joan is heard telling Paterson that he's choking her. Paterson denies that claim, but he responds by telling Joan that he will show her what it's like to be choked. The jury could have reasonably inferred that Paterson carried out his threat. Photographs of Joan, taken the next day, reflect that Joan had injuries to her body,

injuries that included bruising to her neck. The photographs support the jury's conclusion that Joan was choked. Other direct and circumstantial evidence supports Joan's testimony that Paterson used his hand to apply pressure to Joan's throat and neck. For example, Joan testified that after the incident, her throat "really hurt." She also testified she had pain in her throat when she swallowed. Nurse Brookley Torres testified that the signs and symptoms of strangulation include throat pain and a raspy or hoarse voice. Nurse Torres also described strangulation as "any external pressure placed on your neck that could impede your blood flow or air flow." The symptoms Torres described fit the symptoms Joan said she suffered after Paterson choked her on April 9th.

A few days after Joan reported the incident to police, Joan met with Detective Minchew. The jury was entitled to view Detective Minchew's report as showing that Joan had been in a recent altercation with her husband. Detective Minchew testified that when she met with Joan, Joan appeared "overwhelmed[,]" had visible injuries, and was "very scared of [Paterson,]" as she "didn't want him to know" that she had reported the incident to the police.

Fourth, the defense Paterson offered at trial to the State's case was relatively weak. Paterson argues that he suffered "some harm" because Cade Paterson, his son, testified that while he saw his parents arguing, Cade never testified that he saw Paterson assault Joan by choking her or by covering her nose or mouth with one of his hands. Even so, by Cade's account, he didn't observe the entire altercation between his parents. Cade testified that when his parents began arguing, he was standing at the door of their bedroom and the door was open. Cade explained that he screamed while standing at the door. When Paterson heard Cade scream, he had Joan down on the floor, as Cade told it, and he jumped up and "ran to shut the door." Cade explained that after Paterson shut the door, he could no longer see what was going on. According to Joan, when Paterson closed the bedroom door, Paterson choked her again.

Paterson's defensive theory in the trial was that Joan fabricated the assault to obtain custody of their children in their divorce. But as we explained, the evidence shows that Joan sued for divorce after the assault occurred, no evidence shows that Joan had impending plans to divorce Paterson in the months before April 9, 2021, and no evidence shows that

when Joan sued for divorce, a disputed custody issue involving their children was involved in the proceeding.

To sum it up, we conclude that, beyond a reasonable doubt, the trial court's error did not materially affect the jury's deliberations to Paterson's detriment and did not contribute to the jury's verdict. Accordingly, balancing the factors in *Sanchez*, we conclude the trial court's error in submitting alternative theories of guilt that were unsupported by evidence was harmless.[53] Paterson's third issue is overruled.

## Conclusion

We affirm the trial court's judgment.

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on August 21, 2023
Opinion Delivered January 17, 2024
Do Not Publish

Before Horton, Johnson and Wright, JJ.

---

[53]*Sanchez*, 376 S.W.3d at 775-76.